SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Lee Funderburg (a/k/a Lee E. Funderburg)** **(A-29-14) (074760)**

**Argued March 1, 2016 -- Decided May 5, 2016**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal concerning a jury trial for first-degree attempted murder, the Court considers whether a trial court erred by failing to charge the jury sua sponte on the lesser-included offense of attempted passion/provocation manslaughter.

Defendant Lee Funderburg had a romantic relationship with Terra Andrews, which resulted in the birth of a son.  After the relationship ended, defendant and Andrews shared parenting responsibilities for their child.  Later, Andrews began dating Leno Parham.  After Andrews and Parham had been dating for about one year, Parham and defendant developed a somewhat tense relationship, and the two exchanged angry words.  Defendant and Parham did not interact again until February 3, 2009, when Andrews and Parham arrived at defendant's house to pick up the baby.  As Parham buckled the baby into his car seat, defendant reached into Andrews's parked car and took the keys out of the ignition.  Andrews and defendant began arguing, and Parham intervened on Andrews's behalf.  Parham chased defendant for ten to fifteen minutes in an effort to reclaim Andrews's keys.  At some point, defendant brandished a knife.  After giving up the chase, Parham leaned against the car, at which point defendant lunged at him and punched him several times in the chest.  Defendant's father and brother, who were nearby, intervened to separate the men.  When Parham stepped away, he realized he had been stabbed and immediately sought medical attention.  He sustained life-threatening injuries and underwent major surgery but survived.

Defendant was arrested and charged with attempted murder and aggravated assault, as well as related weapons charges.  At defendant's trial, defense counsel's theory of the case was that defendant pulled out a knife after Parham began chasing him because defendant was fearful and wanted the chase to stop.  Defense counsel asserted that defendant did not intentionally stab Parham when he lunged at him; rather, he contended that Parham was accidentally stabbed during a chaotic struggle for control of the knife.

After closing arguments, counsel for both parties met with the judge to discuss the final jury charges.  All counsel agreed that it was necessary to instruct the jury on a number of lesser-included offenses to aggravated assault.  However, neither party requested that a charge of attempted passion/provocation manslaughter be provided as a lesser-included offense of attempted murder.  Accordingly, the judge instructed the jury on a number of lesser-included offenses to aggravated assault, but did not deliver a charge for the lesser-included offense of attempted passion/provocation manslaughter.  The jury found defendant guilty on all counts.

Defendant appealed and the Appellate Division reversed the trial court's decision.  The panel held that the trial court had failed to instruct the jury on the lesser-included offense of attempted passion/provocation manslaughter, and remanded the case for a new trial.  The Court granted the State's petition for certification.  220 N.J. 268 (2015).

**HELD**:  Defendant was not entitled to a jury instruction on attempted passion/provocation manslaughter because the facts before the trial court did not clearly indicate that the elements of attempted passion/provocation manslaughter were present.  In particular, there was insufficient evidence before the jury to demonstrate that a reasonable person in defendant's position would have been adequately provoked by the victim's behavior.

1. The appropriate time to object to a jury charge is "before the jury retires to consider its verdict."  R. 1:7-2.  When a defendant fails to object to an error or omission at trial, as in this case, appellate courts review for plain error.  Under that standard, courts disregard any alleged error unless it is of such a nature as to have been clearly capable of producing an unjust result.  To warrant reversal, an error must be sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.  (pp. 16-17)

2. Attempted passion/provocation manslaughter is comprised of four elements: (1) the provocation must be adequate; (2) the defendant must not have had time to cool off between the provocation and the slaying; (3) the provocation must have actually impassioned the defendant; and (4) the defendant must not have actually cooled off before the slaying. The first two criteria are objective, and the latter two are subjective. To satisfy the first element of attempted passion/provocation manslaughter, a jury must conclude that a reasonable person in the defendant's position would have been provoked sufficiently to arouse the passions of an ordinary man beyond the power of his control. The generally accepted rule is that words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter. (pp. 17-18).

3. Although a trial court is vested with discretion in delivering jury instructions, some of the trial court's decisions, such as the charging of lesser-included offenses, are governed by statute. To justify a lesser-included offense instruction, a rational basis must exist in the evidence for a jury to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense. N.J.S.A. 2C:1-8(e). When the parties to a criminal proceeding do not request that a lesser-included offense be charged, the charge should be delivered to the jury only where the facts in evidence clearly indicate the appropriateness of that charge. For a trial court to be required to charge a jury sua sponte on attempted passion/provocation manslaughter, the court must find first that the two objective elements of the offense are clearly indicated by the evidence. (pp. 18-20)

4. Here, defendant was not entitled to a jury instruction on attempted passion/provocation manslaughter because there was insufficient evidence that a reasonable person in defendant's position would have been adequately provoked by Parham's behavior. Parham's chase did not threaten defendant, and there was insufficient evidence to suggest that Parham wielded the knife. Even if the jury credited testimony by defendant's father that Parham revealed the knife first, the statement would at most support the theory that defendant acted in self-defense; it would likely not support a theory that defendant was actually impassioned and intended to kill Parham. Since the first objective prong of attempted passion/provocation manslaughter cannot be satisfied by the testimony presented at defendant's trial, there is no need to consider whether a reasonable person in defendant's position would have had time to cool off between the provocation and the slaying. An instruction for the lesser-included offense would have been unwarranted. (pp. 20-22)

5. The Court's holding reaffirms the principle that a trial court does not have "the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge." State v. Choice, 98 N.J. 295, 299 (1985). It is only when the facts "clearly indicate" the appropriateness of an attempted passion/provocation manslaughter charge that the duty of the trial court arises. It is not improper for a trial court to withhold instruction on attempted passion/provocation manslaughter when there is no evidence that would clearly indicate the appropriateness of that charge. (pp. 22-23)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to reinstate defendant's conviction.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON join in JUSTICE FERNANDEZ-VINA's opinion. JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

LEE FUNDERBURG (a/k/a LEE E.
FUNDERBURG),

    Defendant-Respondent.


        Argued March 1, 2016 – Decided May 5, 2016

        On certification to the Superior Court,
        Appellate Division.

        William P. Fisher, Acting Assistant
        Prosecutor, argued the cause for appellant
        (Angelo J. Onofri, Acting Mercer County
        Prosecutor, attorney).

        Stephen W. Kirsch, Assistant Deputy Public
        Defender, argued the cause for respondent
        (Joseph E. Krakora, Public Defender,
        attorney).

        Jennifer E. Kmieciak, Deputy Attorney
        General, argued the cause for amicus curiae
        Attorney General of New Jersey (John J.
        Hoffman, Acting Attorney General, attorney).

    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

    This appeal presents the question of whether, in the

context of a jury trial for first-degree attempted murder, a

trial court erred by failing to charge the jury sua sponte on

the lesser-included offense of attempted passion/provocation manslaughter.

The facts in this appeal were established at trial. Defendant Lee Funderburg and Terra Andrews had previously been in a romantic relationship, and they continued to share parenting responsibilities for their two-year-old son even after they stopped dating. Funderburg had a tense relationship with Andrews's new boyfriend, Leno Parham, and they had previously exchanged angry words. On February 3, 2009, an argument ensued between Funderburg and Parham when Andrews arrived with her boyfriend to pick up the baby from Funderburg's house. Funderburg removed the keys from the ignition of Andrews's car. Parham chased Funderburg for ten to fifteen minutes in an effort to reclaim the keys. Several eyewitnesses testified that, at some point before or during the chase, Funderburg brandished a knife. After giving up the chase, Parham leaned against the car, at which point Funderburg lunged at Parham and punched him several times in the chest. Funderburg's father and brother, who were nearby, also got involved in the tussle, ostensibly in an effort to separate the men. When Parham stepped away, he realized he had been stabbed and immediately sought medical attention. He sustained life-threatening injuries and underwent major surgery but survived.

2

Funderburg was arrested later that evening and charged with attempted murder and aggravated assault, as well as related weapons charges. At Funderburg's trial, the judge instructed the jury on a number of lesser-included offenses to aggravated assault. However, counsel did not request a charge for the lesser-included offense of attempted passion/provocation manslaughter, and the charge was not delivered to the jury.

We now address whether it was error for the trial judge to fail to charge the jury sua sponte on the lesser-included offense of attempted passion/provocation manslaughter. We hold that Funderburg was not entitled to a jury instruction on attempted passion/provocation manslaughter because the facts before the trial court did not clearly indicate that the elements of attempted passion/provocation manslaughter were present. In particular, there was insufficient evidence before the jury to demonstrate that a reasonable person in Funderburg's position would have been adequately provoked by Parham's behavior.

Our holding today reaffirms that a trial court does "not . . . have the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge." State v. Choice, 98 N.J. 295, 299 (1985). Because the Appellate Division here improperly sifted through

3

the cold appellate record and constructed a hypothetical and factually unsupported scenario in which Funderburg might have conceivably been adequately provoked, we are compelled to reverse and remand with instructions to reinstate Funderburg's conviction.

## I.

Defendant Lee Funderburg had a romantic relationship with Terra Andrews, which resulted in the birth of a son. Shortly thereafter, Funderburg and Andrews stopped dating but continued to share parenting responsibilities. Later, Andrews began dating Leno Parham, the victim. Parham routinely accompanied Andrews to Funderburg's residence to pick up the baby. However, after Andrews and Parham had been dating for about one year, Parham and Funderburg developed a somewhat tense relationship.

Several weeks before the altercation that resulted in Parham's stabbing, Parham and Funderburg exchanged hostile words by telephone. Parham informed Funderburg that he was going to "come see him shortly" in person. On the way to Funderburg's house, Parham spoke to Funderburg's mother by telephone and informed her that he was planning to fight her son. When Parham arrived at Funderburg's house (which Funderburg shared with his mother, father, and brother), Funderburg came outside and exchanged angry words with Parham. Funderburg briefly retreated

4

into the house and returned with a knife.  The police arrived, and Parham left the scene.

Funderburg and Parham did not interact again until February 3, 2009.  In the late afternoon, Parham received a call from Andrews.  Andrews asked Parham if he would accompany her to Funderburg's house to pick up her son, who was then about two years old.  Parham agreed, and Andrews picked him up in her car.  Both then drove to Funderburg's house.  Most of the trial witnesses testified that it was beginning to snow that afternoon.

Upon arriving, Andrews pulled her car into the driveway and got out to pick up her son while Parham stayed behind in the passenger seat.  Funderburg emerged from inside the house but did not bring the child with him.  Shortly thereafter, Funderburg's brother Jamaal Funderburg[1] came out of the house, holding the baby.  Andrews tried to retrieve her son from Jamaal, but was unable to do so.  Parham then exited the car, took the baby from Jamaal, and began to place the baby into a car seat in the backseat.

As Parham buckled the baby into the car seat, Funderburg reached into the driver's side of the parked car and took the

---

[1] Because the defendant and his family members share the same last name, we refer to the defendant's family members by their first names.  We intend no disrespect by this practice.

keys out of the ignition.  Andrews and Funderburg began arguing.

Funderburg was upset that Andrews brought Parham over every time

she came to pick up their son, and Andrews was upset that she

was being prevented from leaving.  Parham intervened on

Andrews's behalf and began to chase Funderburg around the car in

an attempt to recover the car keys.  The snow on the ground made

pursuit more difficult.  Funderburg evaded Parham for about ten

to fifteen minutes.  Andrews and Jamaal both stood nearby but

did not participate in the chase.

Several eyewitnesses -- including Andrews, Parham, and

Jamaal -- testified that Funderburg brandished a knife.

However, Parham gave conflicting statements as to when the knife

appeared.  Parham told police several days after the incident

that Funderburg brandished the knife after Parham began chasing

him to obtain the car keys.  At trial, Parham indicated that

Funderburg brandished the knife before the chase began.

Parham eventually stopped chasing Funderburg and knocked on

Funderburg's front door, hoping to persuade Funderburg's mother

to entreat Funderburg to return the car keys.  Finding no one

home, Parham walked into the street and asked Funderburg and

Jamaal if they wanted to fight; they did not respond.  Parham

walked back to the car and leaned against it, and Funderburg and

Jamaal both approached him.  Parham and Funderburg continued to

argue verbally for several minutes and the confrontation

6

continued to escalate.  Parham testified that Funderburg held the knife in his hand, but he did not believe Funderburg would use it.  Meanwhile, Funderburg's parents arrived at home by car and parked in front of their house.  Funderburg's father Leroy approached the men as they stood arguing next to Andrews's car.

According to Parham, Funderburg then lunged at him and punched him several times in the chest.  Jamaal and Leroy got involved, and both testified that they intervened to restrain Funderburg and Parham from one another.  However, Parham testified that Jamaal and Leroy helped to pin Parham against the car as Funderburg assaulted him.  Parham struggled with Funderburg for control of the knife, and it eventually was dropped onto the ground.

Parham testified that he stepped away from the car and immediately began feeling "woozy."  He noticed two spots on his shirt and realized he had been hurt and was bleeding.  He walked into the street and flagged down a passing motorist in a van, who immediately agreed to drive him to the hospital upon seeing his injuries.  He was in critical condition when he arrived, but after emergency surgery and transfer to a trauma center, doctors were able to successfully treat him for two stab wounds to the chest, which had resulted in a laceration to the right ventricle of his heart and a perforated lung.  Parham was discharged from the hospital one week later.

Funderburg left the scene of the altercation shortly before police arrived.  He returned about two hours later, and was arrested after declaring to officers, "I'm the one you are looking for."  The officers read Funderburg his Miranda rights, and began to secure him in the police vehicle.  As he was being secured, Funderburg was questioned about the knife.  He told officers he had tossed the knife into a bush near the front porch of his home.  However, officers were unable to locate the knife at the scene or in the vicinity afterwards.

The witnesses' accounts differed as to the features of the knife that was used in the assault.  Andrews stated the knife had a silver blade about four inches long, but she could not describe its handle.  Parham stated that the knife's handle was black with a silver blade about five inches long.  Funderburg's father Leroy stated that the knife looked like a "carpet knife" with a blue or green handle and a blade about one inch long.  Funderburg's brother Jamaal stated that he saw a box-cutter with a green handle about four inches long and a silver blade.

II.

Funderburg was indicted by a Mercer County grand jury on five counts:  first-degree attempted murder, contrary to N.J.S.A. 2C:11-3(a)(1) and (2) and N.J.S.A. 2C:5-1 (Count One); second-degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(1) (Count Two); third-degree aggravated assault, contrary

8

to N.J.S.A. 2C:12-1(b)(2) (Count Three); third-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(d) (Count Four); and fourth-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(d) (Count Five).

The State's case against Funderburg proceeded to trial in January 2011. The State presented testimony from a number of witnesses, including Parham, Andrews, the motorist who drove Parham to the hospital, a neighbor of the Funderburgs, two of Parham's doctors, and officers who responded to the scene.

Funderburg's brother, Jamaal, and his father, Leroy, both testified in Funderburg's defense. Jamaal testified that he did not know who had the weapon initially, but said that it eventually ended up in Parham's hand during the struggle. Jamaal testified that Parham tossed the knife as he was walking away from the fight and into the street, where he flagged down the passing van and left.

Leroy was the only witness to testify that Parham held the knife first. Leroy testified that he saw Parham pull out a knife as he was leaning against the car and before Funderburg lunged at Parham. Leroy explained that he got involved to separate Funderburg from Parham. He testified that he saw Parham toss a knife into the bushes after the scuffle, just before getting into the van that took him to the hospital. Leroy was also the only witness who denied that it was snowing

9

on the afternoon of February 3, 2009; he stated that the weather was cold but dry that day.

In closing arguments, Funderburg's defense counsel presented his theory of the case: Funderburg pulled out a knife after Parham began chasing him because he was fearful and wanted the chase to stop. Defense counsel asserted that Funderburg did not intentionally stab Parham when he lunged at him; rather, he contended that Parham was accidentally stabbed during a chaotic struggle for control of the knife.

After closing arguments, counsel for both parties met with the judge to discuss the final jury charges. All counsel agreed that it was necessary to instruct the jury on a number of lesser-included offenses to aggravated assault. The judge provided instructions on lesser-included offenses, including aggravated assault, attempted serious bodily injury aggravated assault, significant bodily injury aggravated assault, bodily injury with a deadly weapon aggravated assault purposely or knowingly caused, recklessly causing bodily injury with a deadly weapon, simple assault, simple assault without the use of a deadly weapon, and attempt to cause bodily injury. However, neither party requested that a charge of attempted passion/provocation manslaughter be provided to the jury as a lesser-included offense of attempted murder. After several days

10

of deliberations, the jury found Funderburg guilty on all counts.

In January 2012, Funderburg appeared for sentencing.  After merging various charges,[2] the court sentenced him to an aggregate term of thirteen years of incarceration.

Funderburg appealed his conviction in July 2012.  After hearing oral argument in May 2014, the Appellate Division reversed the trial court's decision in an unpublished per curiam opinion.  The appellate court held that the trial court had failed to instruct the jury on the lesser-included offense of attempted passion/provocation manslaughter, and remanded the case for a new trial.  The State thereafter filed a petition for certification, which we granted.  State v. Funderburg, 220 N.J. 268 (2015).

III.

A.

Funderburg argues that the Appellate Division properly reversed and remanded his case for a new trial.  He contends that a jury instruction on attempted passion/ provocation

---

[2] Funderburg's sentence is not at issue in this appeal.  We note briefly that the sentencing judge improperly merged some of Funderburg's weapons charges in violation of our instructions in State v. Diaz, 144 N.J. 628, 636 (1996).  This was error but had no net effect on Funderburg's sentence.  The Appellate Division properly remanded for correction of the judgment of conviction to address this error.

11

manslaughter should have been given by the trial judge sua sponte, and urges that the failure to do so constituted plain and reversible error.

Funderburg relies on case law providing that the trial judge has a duty to instruct the jury on any lesser-included offense for which a rational basis is "clearly indicate[d]" by the record.  See, e.g., State v. Jenkins, 178 N.J. 347, 361 (2004) ("[A] trial court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense."); see State v. Powell, 84 N.J. 305, 318 (1980) (holding that trial court has "duty . . . in a murder case to charge the applicable law to the jury based upon the facts regardless of what requests counsel may make").[3]  He also cites State v. Robinson, 136 N.J. 476, 488-89 (1994), in which we held that attempted passion/provocation manslaughter is a lesser-included offense of attempted murder.

Funderburg contends that a trial judge must sua sponte instruct the jury on attempted passion/provocation manslaughter whenever the objective evidence presented at trial clearly

---

[3] Funderburg argues that counsel requested that all lesser-included offenses be charged to the jury.  However, that statement was in the context of a discussion involving aggravated assault and cannot be read to include a request for an attempted passion/provocation manslaughter charge.

12

indicates both (1) reasonable and adequate provocation and (2) a lack of cooling-off time. See State v. Mauricio, 117 N.J. 402, 411 (1980). He emphasizes that the jury could have found that a reasonable person in his position would have been adequately provoked by Parham's actions, and that such a person would have had insufficient time to "cool off" before the physical altercation took place.

### B.

In opposition, the State urges us to reverse the Appellate Division decision and reinstate defendant's convictions. The State first contends that there was no evidence in the record to "clearly indicate" that an instruction on attempted passion/provocation manslaughter was warranted. It contends that the Appellate Division improperly sifted through the record to find a combination of facts and inferences that would have supported a manslaughter charge at the trial level, even though the trial court was not required to perform such a time-intensive activity.

Next, the State submits that neither of the two objective elements of attempted passion/provocation manslaughter articulated in Mauricio, supra, were present. The State argues that the facts presented by Funderburg's witnesses were not sufficient to support an inference that there was reasonable and adequate provocation, since Funderburg initiated both the

13

confrontation in the driveway and the physical contact that resulted in Parham's stabbing. The State urges that even the foot chase initiated by Parham was not adequate provocation. It notes that Parham's chase was preceded by verbal negotiation, which Funderburg rejected. As such, the State asserts that there was no need for "cooling-off" time, since Parham's actions would not have provoked a reasonable person in Funderburg's situation.

Finally, the State notes that a jury instruction on attempted passion/provocation manslaughter would have contradicted defense counsel's theory of the case that Funderburg pulled out his knife in fear when Parham began chasing him. The State points out that a jury instruction proposing that Funderburg acted out of passion or provocation would indicate that Funderburg in fact intended to injure Parham -- not that Funderburg was trying to defend himself, as Funderburg's counsel argued in his closing statement.

C.

The Attorney General ("AG") participates in this appeal as amicus curiae and supports the State's arguments. The AG submits that the Appellate Division improperly substituted its own judgment for that of the trial judge when it sifted through the record to find support for a lesser-included offense that defendant did not request. The AG cites State v. Denofa, 187

14

N.J. 24, 42 (2006), for the proposition that trial courts are required to give sua sponte jury instructions only when the evidence presented in a case "jump[s] off the page." Here, the AG argues that the Appellate Division cherry-picked several factual references from the record in support of a potential verdict on attempted passion/provocation manslaughter, thereby focusing on the cold appellate record rather than the trial judge's first-hand knowledge of the case.

The AG also contends that no reversible error occurred at Funderburg's trial. The AG submits that a presumption of reversible error for a trial court's omission or incomplete instruction to the jury would produce needless extra work for the State, and would undermine the integrity of the judicial process by disrupting the finality of jury verdicts. The AG also urges that such a presumption could encourage defendants to remain silent at trial and later seek a second bite at the proverbial apple when a judge fails to render a complete instruction.

Finally, the AG urges that the evidence adduced at Funderburg's trial was not enough to warrant an instruction on attempted passion/provocation manslaughter, because none of the witnesses testified believably that Funderburg acted in self-defense when he stabbed Parham. The AG contends that having insufficient evidence of self-defense is tantamount to having

15

insufficient evidence to support a charge of manslaughter, since a manslaughter charge may be warranted when a defendant has an "honest but unreasonable belief in the necessity to resort to force in self-defense." See Model Jury Charges (Criminal), Justification - Self Defense in Self Protection 1 n.1 (revised June 13, 2011). The AG notes that defense counsel conceded to the judge that there was no basis upon which to charge the jury on self-defense, since Funderburg did not testify.[4]

### IV.

### A.

The appropriate time to object to a jury charge is "before the jury retires to consider its verdict." R. 1:7-2. Here, Funderburg did not object to the absence of the attempted passion/provocation manslaughter charge at any point prior to his appeal. When a defendant fails to object to an error or omission at trial, we review for plain error. Under that standard, we disregard any alleged error "unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2; see also State v. Robinson, 165 N.J. 32, 47 (2000) (citations omitted). The mere possibility of an unjust result is not enough. See State v. Jordan, 147 N.J. 409, 422

---

[4] The record reflects that Funderburg unjustifiably absented himself from the last day of trial, and his defense counsel was therefore unable to call Funderburg as a witness in his own defense, although he had planned for Funderburg to testify.

16

(1997).  To warrant reversal by this Court, an error at trial must be sufficient to raise "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached."  Jenkins, supra, 178 N.J. at 361 (citation omitted).

## B.

In Robinson, supra, we recognized for the first time that attempted passion/provocation manslaughter is a cognizable offense under the New Jersey Code of Criminal Justice codified in Title 2C.  136 N.J. at 486.  Under that provision, an intentional homicide that would otherwise be murder may be mitigated to manslaughter when it is "committed in the heat of passion resulting from a reasonable provocation."  N.J.S.A. 2C:11-4(b)(2); see Mauricio, supra, 117 N.J. at 411.  However, in recognizing the crime, we predicted that it would likely "remain unfamiliar, because there are few instances in which a defendant charged with attempted homicide will want to raise before a jury the argument that he or she actually intended to kill."  Robinson, supra, 136 N.J. at 493.

In our jurisprudence, attempted passion/provocation manslaughter is comprised of four elements:  "[1] the provocation must be adequate; [2] the defendant must not have had time to cool off between the provocation and the slaying; [3] the provocation must have actually impassioned the

17

defendant; and [4] the defendant must not have actually cooled off before the slaying." Mauricio, supra, 117 N.J. at 411 (citation omitted). The first two criteria are objective, and the latter two are subjective. Ibid.

To satisfy the first element of attempted passion/provocation manslaughter, a jury must conclude that a reasonable person in the defendant's position would have been provoked sufficiently to "arouse the passions of an ordinary man beyond the power of his control." State v. King, 37 N.J. 285, 301-02 (1962). "The generally accepted rule is that words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." State v. Crisantos, 102 N.J. 265, 274 (1986) (citations omitted).

### C.

A trial court is vested with discretion in delivering the jury instructions that are most applicable to the criminal matter before it. See, e.g., State v. Ernst, 32 N.J. 567, 583-84 (1960) ("[A] trial judge in his discretion may give [a jury] charge in any situation in which he reasonably believes a jury may find a basis for its application." (citing Hargrave v. Stockloss, 127 N.J.L. 262, 266 (E. & A. 1941))), cert. denied, 364 U.S. 943, 81 S. Ct. 464, 5 L. Ed. 2d 374 (1961).

However, some of the trial court's decisions, such as the charging of lesser-included offenses, are governed by statute.

18

N.J.S.A. 2C:1-8 provides that a trial court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e). Thus, "to justify a lesser included offense instruction, a rational basis must exist in the evidence for a jury to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense." State v. Savage, 172 N.J. 374, 396 (2002) (citation omitted); see also Denofa, supra, 187 N.J. at 41-42 (citations omitted).

When the parties to a criminal proceeding do not request that a lesser-included offense such as attempted passion/provocation manslaughter be charged, the charge should be delivered to the jury only when there is "obvious record support for such [a] charge . . . ." Powell, supra, 84 N.J. at 319. A trial court should deliver the instruction sua sponte "only where the facts in evidence 'clearly indicate' the appropriateness of that charge." Savage, supra, 172 N.J. at 397 (citing Choice, supra, 98 N.J. at 298) (further citations omitted). A trial court need not "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty." State v. Brent, 137 N.J. 107, 118 (1994) (quoting State v. Sloane, 111 N.J. 293, 302 (1988)) (further citations omitted). Nor does the trial court have "the

19

obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain" a lesser charge like manslaughter. Choice, supra, 98 N.J. at 299. "Only if the record clearly indicates a lesser-included charge -- that is, if the evidence is jumping off the page -- must the court give the required instruction." Denofa, supra, 187 N.J. at 42 (citations omitted).

For a trial court to be required to charge a jury sua sponte on attempted passion/provocation manslaughter, the court "must find first that the two objective elements of [the offense] are clearly indicated by the evidence." Robinson, supra, 136 N.J. at 491. "If they are, the two subjective elements should 'almost always be left for the jury.'" Id. at 490 (citing Mauricio, supra, 117 N.J. at 413).

V.

Applying the law to the facts of this case, we conclude that Funderburg was not entitled to a jury instruction on attempted passion/provocation manslaughter. We find that the facts before the trial court did not clearly indicate that the objective elements of attempted passion/provocation manslaughter were present. In particular, there was insufficient evidence before the jury that a reasonable person in Funderburg's

20

position would have been adequately provoked by Parham's behavior.  See Mauricio, supra, 117 N.J. at 411.  Parham's chase did not threaten Funderburg; it was simply an attempt to retrieve the car keys.  The chase was preceded by verbal sparring, at which point Funderburg refused to return the keys.  Thus, this interaction alone did not suggest adequate provocation.  Beyond that, there was insufficient evidence to suggest that Parham had wielded the knife.  At best, there was a disagreement among the witnesses about who first handled the knife that later stabbed Parham.  Andrews and Parham both testified that Funderburg was the first person to reveal a knife; Jamaal could not testify as to who revealed the knife.  Only Funderburg's father Leroy testified that Parham revealed the knife first.

Even if the jury found Leroy's testimony to be the most credible of all of the eyewitnesses, Leroy's statement that Parham initially held the knife would at most support the theory that Funderburg acted in self-defense; it would likely not support a theory that Funderburg was actually impassioned and intended to kill Parham.  Ultimately, there was insufficient evidence in the trial record to indicate that a reasonable person in Funderburg's situation would have been adequately provoked.

Without sufficient evidence to suggest adequate provocation, there is no need to consider whether a reasonable person in Funderburg's position would have had time to cool off between the provocation and the slaying. See ibid. Since the first objective prong of attempted passion/provocation manslaughter cannot be satisfied by the testimony presented at Funderburg's trial, an instruction for the lesser-included offense would have been unwarranted.

Our holding today reaffirms our earlier-stated principle that a trial court does not have "the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge." Choice, supra, 98 N.J. at 299. We decline to impose such a burdensome requirement on trial courts or suggest that every potential lesser-included offense must be charged to the jury. It is only when the facts "clearly indicate" the appropriateness of an attempted passion/provocation manslaughter charge that the duty of the trial court arises. See Robinson, supra, 136 N.J. at 489 (citations omitted). "[U]nder our Code [of Criminal Justice,] it is improper for a trial court to charge manslaughter . . . if there is no evidence in the record to support a manslaughter conviction." Crisantos, supra, 102 N.J. at 276 (citation omitted).

In reaching this conclusion, we emphasize that whether Funderburg instigated the fight that led to Parham's stabbing is not relevant to the question before us. "The issue here is whether a reasonable person would have been provoked, not whether a reasonable person would have engaged in conduct that incited the alleged provocation." Mauricio, supra, 117 N.J. at 415. Since we conclude that a reasonable person in Funderburg's position would not have been adequately provoked, the question of "who started it" does not affect our analysis.

Finally, we acknowledge that "correct jury charges are especially critical in guiding deliberations in criminal matters, [and] improper instructions on material issues are presumed to constitute reversible error." Jenkins, supra, 178 N.J. at 361 (citing Jordan, supra, 147 N.J. at 421-22). Our holding today is consistent with that pronouncement. It is not improper for a trial court to withhold instruction on attempted passion/provocation manslaughter when there is no evidence that would clearly indicate the appropriateness of that charge.

## VI.

The judgment of the Appellate Division is reversed, and the matter is remanded to reinstate Funderburg's conviction.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON join in JUSTICE FERNANDEZ-VINA's opinion. JUDGE CUFF (temporarily assigned) did not participate.

23

# SUPREME COURT OF NEW JERSEY

NO. ___A-29___                          SEPTEMBER TERM 2014

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


STATE OF NEW JERSEY,

      Plaintiff-Appellant,

           v.

LEE FUNDERBURG (a/k/a LEE E. FUNDERBURG),

      Defendant-Respondent.



DECIDED _____May 5, 2016_____
          Chief Justice Rabner          PRESIDING

OPINION BY _____Justice Fernandez-Vina_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | ------------------ | |
| TOTALS | 6 | |