**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4348-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DANIEL J. LAWRENCE,

     Defendant-Appellant.

_____

> Argued April 30, 2019 – Decided October 9, 2019
>
> Before Judges Yannotti, Rothstadt and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 15-02-0103.
>
> Michael Timothy Denny, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Michael Timothy Denny, of counsel and on the brief).
>
> Kelly A. Shelton, Assistant Prosecutor, argued the cause for respondent (Richard T. Burke, Warren County Prosecutor, attorney; Kelly A. Shelton, of counsel and on the brief).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

Defendant Daniel Lawrence appeals from the Law Division's May 23, 2017 Judgment of Conviction (JOC) entered after a jury found him guilty of murder and weapons charges. He also challenges the trial judge's imposing of an aggregate sentence of forty years subject to a period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant's conviction was based upon his repeated fatal stabbing of his ex-girlfriend's former boyfriend. At trial, defendant argued he acted in self-defense. The trial judge instructed the jury on that defense and defendant never raised any objection to that charge or to any other charge. Defendant did not ask for any charge in addition to what was proposed by the trial judge.

On appeal, defendant contends for the first time that the trial judge erred (1) by not instructing the jury on passion-provocation manslaughter (PPM); (2) by not properly instructing the jury on self-defense and how it applied to each of the crimes charged; and (3) that resentencing is required because the judge "double-counted" and found aggravating factors without reason. For the reasons that follow, we affirm.

## I.

The facts as developed at trial are summarized as follows. Prior to the fatal stabbing, on September 1, 2014, the victim W.M. (William)[1] contacted his ex-girlfriend M.W. (Mary) to arrange his stopping by Mary's apartment the next day to retrieve his belongings that he had left at Mary's home. The next day, prior to William's arrival, defendant went to Mary's home at approximately 9:00 a.m. in an attempt to restore his relationship with her. Upon defendant's arrival, the two drank alcohol and then fell asleep.

Later that same day, William arrived and asked for his belongings. After answering the door with defendant, Mary went back upstairs, looked throughout her apartment, eventually located William's bag, and gave it to him. After inspecting the bag, William discovered it had been sitting on Mary's porch for over a year and had become infested with roaches. William became upset and told Mary that he would not have treated her belongings that way. According to Mary, it was at that point William and defendant began making "slick comments" toward one another.

---

[1] We refer to individuals by their initials and use pseudonyms to protect their privacy.

A-4348-16T2

According to defendant, William, who was much larger than defendant, quickly approached Mary. Defendant jumped in front of Mary, and William attacked defendant by "grabb[ing] . . . punching and choking . . . [him]." Mary described the altercation as "tussling." Defendant then "got a hold of [his] little pocket knife and used it to fend . . . [William] off." Defendant, in fear for his life, brandished his knife and cut William's arm after both his fists and attempting to speak to William had no effect. At that point, the two stopped fighting.

According to Mary, instead of leaving, William decided to wait outside her home until he could get a cab back to the train station. While he waited outside, defendant and Mary's other family members were on the porch together. According to Mary, defendant and William were "not okay with each other" and were again "tussling." Mary told them to calm down and they complied.

After Mary's family members left—leaving only her, defendant, and William—defendant and William began "making comments" about their relationships with Mary. Mary then went upstairs, heard "arguing" and more "tussling," went back downstairs, saw the two "getting into it" both physically and verbally, and threatened to call the police.

4

Shortly thereafter, Mary's dog got out of the house and Mary ran after him. She then returned to her home with her dog and heard William and defendant being "very, very loud" while she was inside putting on the dog's collar. She walked outside and saw William sitting in a chair, defendant repeatedly striking him while William attempted to protect himself. Seeing blood on defendant and, after defendant did not respond to her verbal request to stop, Mary pulled him off William.

Mary thought defendant was bleeding and went upstairs to get medical supplies. She looked out her bedroom window and noticed William lying on the grass, defendant standing over him. While William was on the ground, defendant said "I guess that hurt" and was "being mean." Mary then called the police. As it turned out, defendant had stabbed William eight times before Mary pulled him off William.

Local police officers and detectives responded to the scene. An ambulance also arrived and although William was still alive when EMTs placed him into the ambulance, by the time they arrived at the hospital William had died. The Medical Examiner later established the cause of death was "[m]ultiple sharp force injuries" and a toxicology report indicated the presence of

5

phencyclidine (PCP) and methamphetamine in William's blood, as well as a blood alcohol content in excess of .12.

On February 25, 2015, a Warren County Grand Jury issued an indictment charging defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1)-(2) (count one); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count two); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count three). Defendant was tried over six days in 2017.

At the conclusion of the trial, before instructing the jury, the trial judge conducted a charge conference during which he reviewed his proposed jury charges with counsel. Defense counsel indicated he had reviewed the most recent version of the charges, and when asked if he had any "[q]uestions, comments, additions, deletions, [or] changes," he said he did not. After the judge instructed the jury with his proposed charges and the jury deliberated, the jury found defendant guilty of each offense charged in the indictment. The following month, the trial judge sentenced defendant. This appeal followed.

On appeal, defendant makes the following arguments:

POINT I

IT WAS PLAIN ERROR TO NOT GIVE AN INSTRUCTION ON PASSION-PROVOCATION WHEN THE DEFENSE WAS SELF-DEFENSE. (NOT RAISED BELOW).

A-4348-16T2

POINT II

THE JURY INSTRUCTIONS ON SELF-DEFENSE MISINFORMED THE JURY ON THE CORRECT BURDEN OF PROOF AND WERE NOT INCORPORATED INTO THE INDIVIDUAL COUNTS, ALLOWING THE JURY TO CONVICT THE DEFENDANT UPON THE SIMPLE ELEMENTS OF THE CRIMES CHARGED WITHOUT EVER CONSI[]DERING THE APPLICABILITY OF SELF-DEFENSE. (NOT RAISED BELOW).

A. THE INSTRUCTIONS ON SELF-DEFENSE WERE INCONSISTENT.

B. THE INSTRUCTIONS FAILED TO CONVEY HOW SELF-DEFENSE RELATES TO EACH OF THE SUBSTANTIVE CRIMES.

POINT III

RESENTENCING IS REQUIRED BECAUSE THE TRIAL COURT IMPERMISSIBLY DOUBLE-COUNTED, FOUND AGGRAVATING FACTOR ONE ABSENT ANY EVIDENCE OF PARTICULAR HEINOUSNESS OR CRUELTY, AND FOUND FACTORS THREE AND NINE WITHOUT ANY REASON WHATSOEVER.

We are not persuaded by defendant's contentions.

II.

We first address defendant's argument that the trial judge committed plain error by failing to charge PPM as a lesser-included offense of murder. Defendant contends the trial judge had a duty to instruct the jury on any lesser-

7

included offenses for which there is a rational basis in the record, even though he did not request the charge. He argues that the evidence established the first two elements of PPM, including defendant's allegation that William was the first aggressor, that defendant reasonably believed his life was in danger, and that the proof of mutual battery was sufficiently provocative to warrant the instruction. Further, defendant contends that because the judge also charged aggravated and reckless manslaughter as lesser-included offenses, his failure to charge PPM was especially erroneous. We disagree.

## A.

At the outset, as defendant recognizes, "[w]hen a defendant fails to object to an error or omission [about a jury charge] at trial, we review for plain error. Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Reversal is warranted only where an error raises "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." Ibid. (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). "The mere possibility of an unjust result is not enough." Ibid.

In its jury charges, a "trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). Accordingly, "the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)).

"[I]f the parties do not request a lesser-included-offense charge, reviewing courts 'apply a higher standard, requiring the unrequested charge to be "clearly indicated" from the record.'" State v. Fowler, __N.J__, __, (2019) (slip op. at 22) (quoting State v. Alexander, 233 N.J. 132, 143 (2018)). See also State v. Denofa, 187 N.J. 24, 42 (2006); N.J.S.A. 2C:1-8(e). As such,

> [t]he "clearly indicated" standard does not require trial courts either to "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty," or "'to meticulously sift through the entire record . . . to see if some combination of facts and inferences might rationally sustain' a lesser charge." Instead, the evidence supporting a lesser-included charge must "jump[ ] off the page" to trigger a trial court's duty to sua sponte instruct a jury on that charge.

[Alexander, 233 N.J. at 143 (second and third alterations in original) (citations omitted).]

B.

PPM is a "well-established lesser-included offense of murder." State v. Carrero, 229 N.J. 118, 129 (2017). Under N.J.S.A. 2C:11-4(b)(2), a criminal homicide may be considered manslaughter when "[a] homicide which would otherwise be murder . . . is committed in the heat of passion resulting from a reasonable provocation." "Passion/provocation manslaughter is an intentional homicide committed under extenuating circumstances that mitigate the murder." State v. Robinson, 136 N.J. 476, 481 (1994). It "contains all the elements of murder except that the presence of reasonable provocation, coupled with defendant's impassioned actions, establish a lesser culpability." Id. at 482; see N.J.S.A. 2C:1-8(d)(3).

Four elements must be met for PPM: (1) there must be adequate provocation; (2) "the defendant must not have had time to cool off between the provocation and the slaying"; (3) the defendant must have been actually impassioned by the provocation; and (4) "the defendant must not have actually cooled off before the slaying." Funderburg, 225 N.J. at 80 (quoting State v. Mauricio, 117 N.J. 402, 411 (1990)).

10                                                                      A-4348-16T2

The first two elements are objective while the latter two are subjective. Carrero, 229 N.J. at 129. Accordingly, a court should decide whether there is sufficient evidence of the first two elements. Ibid. "To warrant the passion/provocation jury charge, the evidence must rationally support only the first two elements; the subjective elements 'should usually be left to the jury to determine.'" Ibid. (quoting Mauricio, 117 N.J. at 413).

The element of adequate provocation is measured by whether "loss of self-control is a reasonable reaction." State v. Foglia, 415 N.J. Super. 106, 126 (App. Div. 2010) (quoting Mauricio, 117 N.J. at 412). With regard to the first element, "the provocation must be 'sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control.'" Carrero, 229 N.J. at 129 (alterations in original) (quoting Mauricio, 117 N.J. at 412). "The generally accepted rule is that words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." Funderburg, 225 N.J. at 80 (quoting State v. Crisantos, 102 N.J. 265, 274 (1986)). "Battery is . . . considered adequate provocation 'almost as a matter of law'" and the element may also be satisfied by "the presence of a gun or knife." Carrero, 229 N.J. at 129 (quoting Mauricio, 117 N.J. at 414). Also, for a PPM charge to be warranted based on mutual combat, that combat "'must have been

11

waged on equal terms [with] no unfair advantage taken of the deceased,' unlike a setting in which the defendant uses a deadly weapon against an unarmed victim." State v. Galicia, 210 N.J. 364, 380 (2012) (quoting Crisantos, 102 N.J. at 274).

Regarding the cool-off period, "it is well-nigh impossible to set specific guidelines in temporal terms." Carrero, 229 N.J. at 129 (quoting Mauricio, 117 N.J. at 413). Therefore, "[t]rial courts are . . . remitted to the sense of the situation as disclosed by the facts." Mauricio, 117 N.J. at 413.

C.

Applying these guiding principles, we conclude that the PPM charge was unwarranted—there were no facts that clearly indicated it was applicable. There was no evidence suggesting at the time defendant repeatedly stabbed William, he had provoked defendant by anything more than "mere words" as he sat in a chair waiting for a taxi. Moreover, there was no proof that William used any type of weapon to threaten or harm either Mary or defendant at that time. To the extent defendant relies upon his earlier fight with William in Mary's apartment, it was apparent that a sufficient amount of time elapsed to permit defendant to cool down had he been adequately provoked during the initial encounter. Under these circumstances, in the absence of any request for the

12

charge, there was no reason to instruct the jury with a PPM without there being any supporting evidence in the record that clearly indicated it was warranted.

III.

A.

Defendant also argues for the first time on appeal that the trial judge's instruction on self-defense was inconsistent and improper because it "distort[ed] and minimiz[ed] the State's burden of proof" and "fail[ed] to incorporate the absence of self-defense into each of the substantive counts as effectively an element that the State must disprove before a conviction can be returned." He contends the jury should have been instructed that it was the State's burden to prove defendant's belief was unreasonable, or that the elements of self-defense did not exist, rather than instructing them it was defendant's burden to prove that his belief was reasonable and that the elements of the defense did in fact exist. Defendant also argues that the instructions "only briefly stated" the State bore the burden of disproving self-defense and immediately contradicted that statement by referencing the jury's duty to determine if the elements of the defense existed. Together, the instructions "diluted the State's burden of disproving self-defense" and "d[id] not clearly and consistently inform the jury

that they must acquit [defendant] unless the State disproves self-defense beyond a reasonable doubt," constituting reversible error.

Defendant also contends that the instructions did not convey how self-defense relates to each of the crimes charged. More specifically, the jury was not instructed on "the absence of self-defense" as "an element of those counts that the State would have to prove before a conviction could be obtained." He argues that in addition to charging the jury with the ordinary elements of each of the charged crimes, if self-defense is raised, the court must include "an additional element for the State to prove: the absence of self-defense" for each charged crime. Also, according to defendant, juries should be instructed that the absence of PPM is an element of murder that the State must disprove. Similarly, they should be instructed that the absence of self-defense is an element of murder. We find no merit to these contentions.

The judge's charge on murder, and the lesser-included offenses of aggravated manslaughter and reckless manslaughter, were followed by instructions on self-defense that mirrored the applicable Model Jury Charge. See Model Jury Charges (Criminal), "Justification-Self Defense in Self Protection (N.J.S.A. 2C:3-4)" (rev. Jun. 13, 2011). The charge given by the judge stated the following:

The indictment charges that the defendant has committed the crime of murder. The defendant contends that if the State proves he used or threatened to use force upon the other person, that such force was justifiably used for his self-protection. The statute reads, "[t]he use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person or on the present occasion."

In other words, self-defense is the right of a person to defend against any unlawful force. Self-defense is also the right of a person to defend against seriously threatened unlawful force that is actually pending or reasonably anticipated. When a person is in imminent danger of bodily harm, the person has the right to use force or even deadly force when that force is necessary to prevent the use against him of unlawful force. The force used by the defendant must not be significantly greater than, and must be proportionate to, the unlawful force threatened or used against the defendant.

Unlawful force is defined as force used against a person without the person's consent in such a way that the action would be a civil wrong or criminal offense. If the force used by the defendant was not immediately necessary for the defendant's protection, or if the force used by the defendant was disproportionate in its intensity, then the use of such force by the defendant was not justified and the self-defense claim fails. There are different levels of force that a person may use in his own defense to prevent unlawful harm.

The defendant can only use that amount or degree of force that he reasonably believes is necessary to protect himself against harm. If the defendant is attempting to protect himself against exposure to death or the

15

substantial danger of serious bodily injury, he may resort to the use of deadly force. Otherwise, he may only resort to non-deadly force.

The use of deadly force may be justified only to defend against force or the threat of force of nearly equal severity and is not justifiable unless the defendant reasonably believes that such force is necessary to protect himself against death or serious bodily injury. Deadly force is defined as force that the defendant uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily injury. By serious bodily harm, we mean an injury that creates a risk of death or which causes serious permanent disfigurement or which causes a protracted loss or impairment of the function of any bodily member or organ. For example, if one were to purposely fire a firearm in the direction of another person, that would be an example of deadly force. A mere threat with a firearm, however, intended only to make the victim of the threat believe the defendant will use the firearm if necessary is not an example of deadly force.

One cannot respond with deadly force to a threat or even an actual minor attack. For example, a slap or an imminent threat of being pushed in a crowd would not ordinarily justify the use of deadly force to defend against such unlawful conduct. Therefore, you must first determine whether the defendant used deadly force. If you find that the defendant did so, then you must determine if the defendant reasonably believes he had to use deadly force to defend against the unlawful conduct of another.

A reasonable belief is one which would be held by a person of ordinary prudence and intelligence, situated as this defendant was. Self-defense exonerates a person

who uses force in the reasonable belief that such action was necessary to prevent his or her death or serious injury, even though his belief was later proven mistaken. Accordingly, the law requires only a reasonable, not necessarily a correct, judgment.

Even if you find the use of deadly force was reasonable, there are limitations on the use of deadly force. If you find that the defendant, with the purpose of causing death or serious bodily harm to another person, provoked or incited the use of force against himself in the same encounter, then that defense is not available to him.

If you find that the defendant knew that he could have avoided the necessity of using deadly force by retreating, provided that the defendant knew he could do so with complete safety, then the defense is not available to him.

In your inquiry as to whether a defendant who resorted to deadly force knew that an opportunity to retreat with complete safety was available, the total circumstances, including the attendant excitement accompanying the situation, must be considered.

The State has the burden to prove to you beyond a reasonable doubt that the defense of self-defense is untrue. This defense only applies if all conditions or elements previously described exist. The defense must be rejected if the State disproves any of the conditions beyond a reasonable doubt.

The same theory applies to the issue of retreat. Remember that the obligation of the defendant to retreat only arises if you find that the defendant resorts to the use of deadly force. If the defendant does not resort to the use of deadly force, one who is unlawfully

17

attacked may hold his position and not retreat whether the attack upon him is by deadly force or some lesser force.

The burden of proof is upon the State to prove beyond a reasonable doubt the defendant knew he could have retreated with complete safety. If the State carries its burden, then you must disallow the defense. If the State does not satisfy this burden and you do have a reasonable doubt, then it must be resolved in favor of the defendant and you must allow the claim of self-defense and acquit the defendant.

Similarly, the judge instructed the jury as to the two other offenses in accordance with the Model Jury Charges. As to count three, the judge included a charge on protective purpose that applies when a defendant argues his possession of the weapon was part of his self-defense. The judge also explained how that charge differed from self-defense as it applied to murder in that it did not require defendant have a reasonable belief that he needed the weapon to defend himself. See Model Jury Charges (Criminal), "Unlawful Possession of a Weapon (N.J.S.A. 2C:39-5(d))" (rev. Apr. 18, 2005); Model Jury Charges (Criminal), "Possession of a Weapon with a Purpose to Use it Unlawfully Against the Person or Property of Another (N.J.S.A. 2C:39-4(d))" (rev. Jun. 16, 2003).

During their deliberations, the jury sent a question to the judge asking "once the defendant claims self-defense, is the burden of proof shifted to the

defendant?" The judge responded by stating the "simple straightforward answer to that is no. The burden of proof never shifts to the defendant."

B.

We begin our review of the challenged charge by observing that here too, defendant did not interpose an objection to any of the trial judge's charges, requiring us to again review only for "plain error." We will reverse only for plain error, or error that is "clearly capable of producing an unjust result." Funderburg, 225 N.J. at 79 (quoting R. 2:10-2). The error must have "led the jury to a result it otherwise might not have reached." State v. Castagna, 376 N.J. Super. 323, 355-56 (App. Div. 2005) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). "[P]lain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court . . . .'" State v. Nero, 195 N.J. 397, 407 (2008) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

In our review, if a defendant does not object to an instruction at trial, we presume that the instructions were adequate. State v. Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010). Moreover, there is a "presumption of propriety that attaches to a trial court's reliance on the Model Jury Charge" when it is used for

19

the specific purpose for which it was adopted.  Estate of Kotsovska v. Liebman, 221 N.J. 568, 596 (2015).

We conclude there was no error, let alone "plain error" in the trial judge's reliance upon the Model Jury Charges.  Here, the jury instructions for the three crimes charged mirrored the Model Jury Charge for each offense.  For defendant's claim of self-defense, with regard to counts one and three, the judge included instructions as to how self-defense applied to the offenses and how it differed in the context of each crime.  Correctly, the judge did not discuss self-defense in the context of count two, because it "does not excuse possession of a weapon in violation of section 5d except in 'those rare and momentary circumstances where an individual arms himself spontaneously to meet an immediate danger.'"  State v. Kelly, 118 N.J. 370, 372 (1990) (quoting State v. Harmon, 104 N.J. 189, 208-09 (1986)).  That was not the situation here.

We find the judge's charges adequately conveyed that the State bore the burden of proof, the relationship of self-defense to the substantive charges, and properly instructed the jury to apply self-defense if it found it appropriate. Considering the charge as a whole, the jury did not consider defendant's guilt without also considering the applicability of self-defense, as demonstrated by the jury's request for clarification.  The charges followed a logical sequence, and

the judge advised the jury that it could not convict defendant unless the State disproved self-defense beyond a reasonable doubt. Finally, the judge informed the jury multiple times that even after defendant claims self-defense, the burden of proof never shifts to the defendant.

IV.

Last, we address defendant's challenge to his sentence. The trial judge sentenced defendant to a term of forty years subject to NERA for count one, merged count three into count one, and imposed a concurrent eighteen months for count two. In support of the sentence, the judge found aggravating factors one, N.J.S.A. 2C:44-1(a)(1), the nature and circumstances of the offense and the role of the actor therein, including whether it was committed in an especially heinous, cruel, or depraved manner; three, N.J.S.A. 2C:44-1(a)(3), the risk that defendant will commit another offense; and nine, N.J.S.A. 2C:44-1(a)(9), the need for deterring the defendant and others from violating the law. The judge noted that aggravating factor one was appropriate given the brutality of the murder, the fact that defendant stabbed William nine times, and showed indifference to the fact that he had taken a life.

The judge rejected defendant's request for application of mitigating factors three, N.J.S.A. 2C:44-1(b)(3), that defendant acted under a strong

provocation, and seven, N.J.S.A. 2C:44-1(b)(7), that defendant had no history of prior criminal activity or has led a law-abiding life. The judge declined to find either, stating that there was a considerable amount of verbal altercation prior to the stabbing, which is not strong provocation, and that although defendant did not have prior felony convictions, he had municipal convictions.

We "review sentences deferentially, ordinarily affirming even where we would have arrived at a different result." State v. Locane, 454 N.J. Super. 98, 120 (App. Div. 2018) (citing State v. Lawless, 214 N.J. 594, 606 (2013)). We "ask only if legislative guidelines have been followed, if competent credible evidence supports each finding of fact upon which the judge based the sentence, and . . . decide whether application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." Ibid. (citing State v. Roth, 95 N.J. 334, 364-65 (1984)). "The assessment of statutory aggravating and mitigating sentencing factors must be fully supported by the evidence. '[T]here is more discretion involved in identifying mitigating factors than in addressing aggravating factors.'" Ibid. (alteration in original) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)).

On appeal, defendant contends that resentencing is necessary due to improper application and weighing of aggravating factors. He argues that the

trial judge did not provide an appropriate basis for finding aggravating factor one or state why the crime was especially heinous or cruel as compared to other murders. Rather, the judge stated only that defendant stabbed William nine times and that defendant must have known that would result in death. Moreover, defendant argues that because the trial judge found this factor based on an aspect of the offense that the Legislature took into account for sentencing purposes—defendant's mental state—it constituted "improper double-counting" of the elements of the crime. Regarding factors three and nine, defendant contends that the judge failed to engage in any analysis and they are unsupported by the record.

It is well-settled that a judge "shall state reasons for imposing [a] sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence." State v. Natale, 184 N.J. 458, 488 (2005) (quoting R. 3:21-4(g)) (alterations in original). Defendant's arguments regarding aggravating factor one being unsupported as double-counting are unpersuasive. Defendant is correct that "a court may not double count a fact that establishes an element of the offense as a basis to support an aggravating or mitigating factor." Locane, 454 N.J. Super. at 123. However, the trial judge acknowledged this limitation and stated that although he could not use William's

death as an aggravating factor without double-counting, he could properly consider the nature of the death and brutality of the crime as aggravating factors. See State v. Soto, 340 N.J. Super. 47, 71 (App. Div. 2001) (citations omitted) ("[W]here the Legislature has already taken certain aspects of the nature and circumstances of the offense into account in grading, the judge may not consider those same aspects again as aggravating factors. Nevertheless, the cruel manner of an attack can be considered an aggravating factor."). The trial judge thoroughly explained the facts on the record that led him to find aggravating factor one and did not abuse his discretion in doing so.

With regard to aggravating factors three and nine, we conclude they were supported by defendant's municipal court convictions and the nature of his behavior, before and after, repeatedly and fatally stabbing William. We have no reason to disturb defendant's sentence as the judge's decision was supported by the evidence and it does not "shock the judicial conscience." See State v. Fuentes, 217 N.J. 57, 80-81 (2014) (quoting Roth, 95 N.J. at 365).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4348-16T2