**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0679-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ELIJAH L. JOHNSON,

     Defendant-Appellant.

_____

Submitted May 25, 2021 – Decided June 9, 2021

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 15-04-1199.

Joseph E. Krakora, Public Defender, attorney for appellant (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the briefs).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Debra B. Albuquerque, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

An Atlantic County grand jury returned a five-count indictment charging defendant Elijah J. Johnson and his two co-defendants, Juan Ayala and Anthony Calderon, with first-degree armed robbery, N.J.S.A. 2C:15-1(b) (count one); second-degree conspiracy to commit first-degree robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count two); second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1) (count three); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four); and fourth-degree aggravated assault by pointing a handgun at another person, N.J.S.A. 2C:12-1(b)(4) (count five). Prior to defendant's trial, the judge granted the State's motion to amend count three to third-degree unlawful possession of an air gun without a permit, N.J.S.A. 2C:39-5(b)(2).

After the judge suppressed a recorded statement defendant gave to the police following his arrest, we granted the State's motion for leave to appeal and held that the statement was admissible. State v. Johnson, No. A-5671-16 (App. Div. Feb. 20, 2018) (slip op. at 5-6). Following a multi-day trial, the jury acquitted defendant of first-degree robbery, but convicted him of the lesser-included offense of third-degree theft, N.J.S.A. 2C:20-2(b)(2)(d) under count one; second-degree conspiracy to commit armed robbery under count two; and the two weapons offenses charged in counts three and four. The jury found

2

defendant not guilty of assault by pointing a firearm at another person and not guilty of the lesser-included offenses of simple assault and simple assault with a deadly weapon under count five.

Thereafter, the judge merged the theft and weapons offenses into defendant's conviction for conspiracy to commit armed robbery, and sentenced defendant on that conviction to six years in prison subject to an eighty-five percent period of parole ineligibility and three years of parole supervision upon release pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. This appeal followed.

On appeal, defendant raises the following contentions:

POINT I

THE TRIAL COURT'S FAILURE TO CHARGE THE JURY ON THE LESSER-INCLUDED OFFENSE OF CONSPIRACY TO COMMIT THEFT REQUIRES REVERSAL OF [DEFENDANT'S] CONVICTION FOR CONSPIRACY TO COMMIT ARMED ROBBERY. (Not Raised Below).

POINT II

THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON THE STATE'S BURDEN TO PROVE IDENTITY AND ON THIRD-PARTY GUILT. (Not Raised Below).

A-0679-19

POINT III

THE MATTER SHOULD BE REMANDED FOR
RESENTENCING BECAUSE THE COURT FAILED
TO ADEQUATELY CONSIDER [DEFENDANT'S]
YOUTH IN WEIGHING THE MITIGATING
FACTORS AND WHETHER A DOWNGRADED
SENTENCE WAS IN THE INTERESTS OF JUSTICE.

 A. The Court Failed to Adequately Consider
Scientific Research Regarding the Criminal
Culpability of Young Adults in Assessing
Mitigating Factors One, Two, Eight, and Nine.

 B. The Matter Should Be Remanded for
Consideration of Mitigating Factor Fourteen.

After reviewing the record in light of these contentions and the applicable law, we vacate defendant's conviction and sentence for conspiracy to commit armed robbery, affirm his convictions on the remaining counts, and remand for further proceedings.

I.

On the day of the incident involved in this case, Ana Soto was working as an attendant at a gas station. Soto's friend, Orlando DelValle, approached her during her shift. Soto testified that DelValle told her "[h]e wanted to stage a robbery. He wanted me to act surprised and [said] that he'll send somebody to rob me." Soto stated she "told him no," but admitted she also informed her friend that she "had money."

4

DelValle later came back to the gas station with his brother, Ayala. According to Soto, "they brought up again about the robbery [and] said just act surprised, we'll send somebody and just hand over the money." Soto "said no."

On a third occasion that day, DelValle and Ayala returned to the gas station, this time with defendant. They again discussed the robbery scheme and also "talked about . . . having a gun." Soto testified she "told them that [she] wasn't going to do the robbery."[1]

Soto testified that defendant, DelValle, Ayala, and defendant's girlfriend came to the gas station a fourth time in a burgundy-colored car. She identified a surveillance photo showing her speaking to the group, and noted that defendant was the individual wearing light-colored pants.

Soto stated she did not believe that her friends were serious about the plan. Nevertheless, she testified she told the station manager's son, Sarabjit Singh, "what they were talking to [her] about," and gave him $500 she was carrying. Singh testified that Soto gave him the money "very close to closing time" because she did not "feel comfortable carrying all the money and she [did not]

---

[1] Soto testified that during one of their conversations, DelValle and Ayala told her she "didn't have to be worried because the person [who would stage the robbery] was going back to Camden." Calderon lived in Camden, but defendant, DelValle, and Ayala did not.

A-0679-19

have a good feeling about" what might happen. Soto kept a small amount of money to use to make change for the customers.

As closing time approached, Soto was about to begin pumping gas for a customer in a truck. She stated that as she was asking the customer how much gas he wanted, "somebody ran up behind [her] with a gun and told [her] to give [him] the money." Soto claimed the man pointed the gun in her face and she "thought it was real." She stated she "was scared" and thought she "could die." The man then took money from Soto's pocket and fled the scene on foot.

The State played surveillance video footage of the incident at the trial. The man was wearing a black hooded sweatshirt and tan pants, but the individual's face was covered by what looked like a ski mask. The customer described the man who took the money from Soto as having a "tan" skin color, "possibly dark skin Italian or Spanish." However, he stated that he only "[p]artially" saw the man's face and "[p]robably" could not identify him.

Detective Eugene Soracco interviewed Soto about an hour after the incident, and then spoke to DelValle, who was found in the vicinity of the gas station. The police then arrested defendant, Ayala, and Calderon at a "strip club." Defendant was wearing tan pants that matched the depiction of the suspect in the surveillance video.

A-0679-19

Before entering the club, the police found a burgundy Mercury Marquis in the parking lot. Soracco looked in the window and saw what appeared to be a ski mask in the front passenger door pocket and a black hooded sweatshirt on the back seat. After a search warrant was obtained, the police also found a pair of black gloves and "a semi-automatic airsoft pistol" in the car. The parties stipulated that the weapon was operational.

Defendant subsequently gave a recorded statement to Soracco that the State played for the jury. Defendant told Soracco it was Ayala's idea to rob the gas station and that Ayala gave him the airsoft gun. Defendant stated he approached Soto with the gun while wearing the ski mask, black sweatshirt, and black gloves seized from the car. Defendant also admitted he was wearing tan pants that day. He stated that he took about eighty dollars from Soto's pocket and then ran away.

Defendant told Soracco that the only reason Calderon was at the club with him and Ayala was that Calderon drove them there in his burgundy Mercury Marquis. Defendant claimed that Soto did not know there would be a robbery. Defendant also asserted that although Calderon might have heard him talking to Ayala about what happened, Calderon likely did not know anything about the incident.

A-0679-19

Defendant did not testify, and he presented no witnesses.

II.

At trial, defendant's primary argument was that Soto was part of the scheme to steal money from the gas station. As a result, he asserted that he should not be found guilty of first-degree armed robbery under count one because if Soto was a willing participant in the plan and knew it was a staged event, the State could not prove that he threatened her with the airsoft pistol or put her in fear of immediate bodily injury as required to sustain a conviction for this offense under N.J.S.A. 2C:15-1(b). Accordingly, the judge instructed the jury on the lesser-included offense of third-degree theft from the person, which merely required that the State prove that defendant took the property of another, in this case the gas station's money that Soto was carrying.

Count two of the indictment charged defendant with second-degree conspiracy to commit armed robbery. Because the judge had decided to instruct the jury on the lesser-included offense of third-degree theft in connection with the substantive armed robbery charge under count one, it would have been logical for the judge to also instruct the jury on the lesser-included offense of third-degree conspiracy to commit theft under count two.

A-0679-19

Inexplicably, however, defendant did not also ask the judge to give the jury an instruction on the lesser-included offense of third-degree conspiracy to commit theft, and the judge did not provide this instruction sua sponte. In Point I, defendant argues that the judge's failure to provide this "clearly indicated" instruction was plain error requiring that his conviction for second-degree conspiracy to commit robbery be vacated. We agree.

"When a defendant fails to object to an error or omission [about a jury charge] at trial, we review for plain error. Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Reversal is warranted only where an error raises "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." Ibid. (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). "The mere possibility of an unjust result is not enough." Ibid. A jury instruction is particularly "crucial to the jury's deliberations on the guilt of a criminal defendant," and "'[e]rrors [having a direct impact] upon these sensitive areas of a criminal trial are poor candidates for rehabilitation' under the plain error theory." State v. Jordan, 147 N.J. 409, 422-23 (1997) (quoting State v. Simon, 79 N.J. 191, 206 (1979)).

A-0679-19

In its jury instructions, a "trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). Accordingly, "the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)).

The rationale for imposing such an independent obligation on the trial judge in this context is that "[n]o defendant should be convicted of a greater crime or acquitted merely because the jury was precluded from considering a lesser offense that is clearly indicated in the record." State v. Garron, 177 N.J. 147, 180 (2003). The danger of prejudice to a defendant that may result from a trial judge's failure to charge a lesser-included offense to the jury is that "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." State v. Sloane, 111 N.J. 293, 299 (1988) (emphasis omitted) (quoting Keeble v. United States, 412 U.S. 205, 212-13 (1973)).

10

As such, trial courts must "avoid presenting the jury with an 'all-or-nothing' choice, a choice between convicting a defendant of an offense greater than the one he committed and not convicting him at all despite his guilt of a lesser offense." State v. Maloney, 216 N.J. 91, 113 (2013) (Albin, J., dissenting) (citing Garron, 177 N.J. at 180). Further, the trial court reviews the evidence "in the light most favorable to [the] defendant." State v. Bauman, 298 N.J. Super. 176, 198-99 (App. Div. 1997) (citing State v. Galloway, 133 N.J. 631, 648 (1993); State v. Moore, 113 N.J. 239, 287 (1988)).

"[I]f the parties do not request a lesser-included-offense charge, reviewing courts 'apply a higher standard, requiring the unrequested charge to be "clearly indicated" from the record.'" State v. Fowler, 239 N.J. 171, 188 (2019) (quoting State v. Alexander, 233 N.J. 132, 143 (2018)); see also State v. Denofa, 187 N.J. 24, 42 (2006); N.J.S.A. 2C:1-8(e). As such:

> The "clearly indicated" standard does not require trial courts either to "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty," . . . or "'to meticulously sift through the entire record . . . to see if some combination of facts and inferences might rationally sustain' a lesser charge" . . . . Instead, the evidence supporting a lesser-included charge must "jump[] off the page" to trigger a trial court's duty to sua sponte instruct a jury on that charge.

A-0679-19

[Alexander, 233 N.J. at 143 (second and fourth alterations in original) (citations omitted).]

Applying these principles, we are convinced that an instruction on the lesser-included offense of third-degree conspiracy to commit theft under count two was "clearly indicated" based upon the facts adduced at the trial.

Our Supreme Court has held that "theft, by definition, is a lesser-included offense of robbery." State v. Ingram, 196 N.J. 23, 39 (2008). This is because robbery has the same elements as theft with the additional requirement of demonstrating the defendant used force or threatened bodily harm. N.J.S.A. 2C:15-1(a); N.J.S.A. 2C:20-2(b)(2)(d). Theft is essentially an element of robbery, making "all robberies . . . thefts, but not all thefts . . . robberies." State v. Mejia, 141 N.J. 475, 495 (1995). Therefore, because the only difference between theft and robbery is that theft entails a less serious injury or threat, theft is a lesser-included offense of robbery. N.J.S.A. 2C:1-8(d)(3).

The same principles apply to conspiracy to commit theft and conspiracy to commit robbery. To prove any kind of conspiracy, the State must prove that the defendant agreed with another person to engage in conduct constituting the offense or agreed to aid another person in the planning or completion of the offense. State v. Samuels, 189 N.J. 236, 245 (2007). Conspiracy to commit robbery requires threat of bodily injury or the use of a deadly weapon, whereas

conspiracy to commit theft requires no such threat, as the State must only show that the defendant had the purpose of facilitating a theft. N.J.S.A. 2C:15-1(a); see Model Jury Charges (Criminal), "Theft From The Person (N.J.S.A. 2C:20-2(b)(2)(d))" (rev. Apr. 14, 2013). The only difference between conspiracy to commit theft and robbery is the existence of a serious injury or threat, making conspiracy to commit theft a lesser-included offense of conspiracy to commit robbery. N.J.S.A. 2C:1-8(d)(3).

Here, the evidence produced by the State at trial "clearly indicated" that an instruction on the lesser-included offense of conspiracy to commit theft was warranted. Soto stated that she was approached several times by defendant, Ayala, and DelValle to participate in the scheme to take money from the gas station. Although Soto testified she turned down this request, this was a question of credibility to be determined by the jury. Soto admitted she told DelValle that she was carrying the station's money. She also indicated she knew a "robbery" would occur when she gave most of the money she had in her possession to her co-worker, Singh. Thus, there was more than enough evidence in the record for the jury to conclude that both Soto and her assailant agreed to fake a robbery, or that Soto was aware her friends were going to do so, thereby rendering the offense a third-degree conspiracy to commit theft because there was no

A-0679-19

agreement to threaten bodily harm or use a deadly weapon against her during the offense.

To be sure, the record also supported the instruction the judge gave to the jury on the conspiracy to commit robbery charge. Soto testified she did not believe her friends were serious and she declined their persistent requests that she participate in their scheme. The jury could have found that Soto's testimony on this point was credible. In addition, defendant said in his recorded statement that Soto did not know he was "gonna rob her" and that she was "unwilling" to give him the money.

However, while the jury did convict defendant of conspiracy to commit armed robbery, it did so under circumstances in which its only other option was to acquit defendant of this charge. We cannot say on the basis of this record that, given a choice, the jury would not have opted to convict defendant of the lesser-included offense of conspiracy to commit theft if it had been given the opportunity to do so by the judge's instructions. Indeed, the jury found defendant guilty of theft, but not guilty of armed robbery or of aggravated assault by pointing a gun at Soto.

The evidence in support of the lesser-included offense of conspiracy to commit theft obviously "jumped from the page" because the judge decided to

14

instruct the jury on the lesser-included offense of theft under count one based upon this same evidence. Alexander, 233 N.J. at 143. Once the judge decided to give that charge, logic and consistency required that the judge also instruct the jury on the corresponding lesser-included offense as to conspiracy under count two. Therefore, we vacate defendant's conviction and sentence for second-degree conspiracy to commit robbery, and remand for further proceedings, which may include a resolution by plea agreement or a new trial.

III.

In Point II, defendant argues that the trial judge erred by failing to give the jury a separate instruction on identification and third-party guilt. After carefully reviewing this contention, we conclude that it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only the following brief comments.

As noted, we review a defendant's failure to object to a jury charge at trial under the plain error standard. See Funderburg, 225 N.J. at 79. In determining whether an alleged defect in a charge rises to the level of reversible error, the alleged error must be "viewed in the totality of the entire charge, not in isolation." State v. Chapland, 187 N.J. 275, 289 (2006); see also State v. Figueroa, 190 N.J. 219, 246 (2007). "If the defendant does not object to the

charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012). Viewed through the prism of these precedents, we discern no error on the part of the judge under the circumstances presented here.

While defendant argues that identification was an issue at trial, this assertion neglects that fact that defendant admitted to his involvement in the offense in his statement to Detective Soracco. Thus, defendant explained that he obtained the airsoft pistol from Ayala and used it when he took the money from Soto. He admitted wearing the black sweatshirt, hat, and gloves found in the car, and was wearing the same pair of pants shown in the surveillance photo when he was arrested. Because defendant's identity as a participant in the offense was not in question, a separate instruction on identification was not required.

Similarly, defendant took full responsibility for taking the money from Soto and for carrying the airsoft pistol during the incident. Contrary to his new suggestion that Calderon may have been the man who took the money, defendant told Soracco that Calderon was only with him and Ayala because Calderon wanted to go to the strip club and defendant and Ayala needed him to give them a ride there. Calderon was also not present for any of the meetings with Soto

16

prior to the incident. Thus, there was no basis for the judge to give an instruction on third-party guilt.

In any event, the judge carefully instructed the jury that the State was required to prove beyond a reasonable doubt that defendant committed each element of the offenses for which he was charged. State v. Cotto, 182 N.J. 316, 327 (2005). The judge told the jurors:

> The defendant, of course, has pleaded not guilty to the charges. The defendant [i]n a trial is presumed to be innocent and unless each and every essential element of an offense charged is proven beyond a reasonable doubt, the defendant must be found not guilty of that charge. The burden of proving each element of a charge beyond a reasonable doubt rests upon the State and that burden never shifts to the defendant. The defendant in a criminal case has no obligation or duty to prove his innocence or offer any proof relating to his innocence.

Because the judge's instruction fully informed the jurors that they could only convict defendant if they found that the State established beyond a reasonable doubt that he was in fact the person who approached Soto at the gas station and took money from her, no further instructions were needed. Accordingly, we affirm defendant's convictions for third-degree theft, third-degree unlawful possession of an air gun without a permit, and second-degree possession of a firearm for an unlawful purpose.

17

IV.

Finally, defendant argues in Point III that the judge erred by failing to consider his relative youth[2] as a mitigating factor when she sentenced him. He also points out that our Legislature recently enacted N.J.S.A. 2C:44-1(b)(14) which, effective October 19, 2020, allows a sentencing judge to consider a defendant's youth as a statutory mitigating factor, and he asks that this statute be applied in determining his sentence.

Because of the unique procedural posture of this case, we need not address these specific issues here. In sentencing defendant, the judge merged defendant's convictions under counts one, three, and four into his conviction for second-degree conspiracy to commit robbery under count two. The judge sentenced defendant under that count to a six-year term, subject to NERA.

Because we have now vacated defendant's conviction and sentence under count two, a resentencing will be required on counts one, three, and four. Obviously, the trial court and the parties should resolve count two on its merits before that occurs. If defendant enters into a plea agreement or is found guilty after a new trial of the original charge of conspiracy to commit robbery or the lesser-included offense of conspiracy to commit theft, the court should

---

[2] Defendant was twenty years old at the time he committed the offenses.

A-0679-19

resentence defendant on that conviction and defendant's other three convictions. If defendant is found not guilty under count two, then the court must resentence him on the three charges we have affirmed.

As this court recently held, "[w]hen an appellate court orders a resentencing, a defendant is ordinarily entitled to a full rehearing." State v. Bellamy, ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 9) (citing State v. Case, 220 N.J. 49, 70 (2014)). Thus, "[t]he resentencing judge must 'view defendant as he stands before the court on that day unless the remand order specifies a different and more limited resentencing proceeding . . . .'" Id. at 10 (quoting State v. Randolph, 210 N.J. 330, 354 (2012)). Because the judge who will be resentencing defendant in this case will be viewing him "as [he] stands before the court on that day," the judge may consider defendant's arguments concerning his age at the time he committed the offenses, and apply the new mitigating factor set forth in N.J.S.A. 2C:44-1(b)(14). Id. at 18 (quoting Randolph, 210 N.J. at 354).

In sum, we vacate defendant's conviction and sentence under count two for conspiracy to commit robbery and remand for further proceedings. We affirm defendant's convictions under counts one, three, and four and remand for

19

resentencing on these three charges after the trial court resolves the conspiracy charge.

Vacated in part; affirmed in part; and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION