**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1284-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NATHAN WILLIAMS, III,
a/k/a NATHANIEL WILLIAMS,

     Defendant-Appellant.

_____

Submitted September 16, 2021 – Decided October 28, 2021

Before Judges Fuentes and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-02-0128.

Joseph E. Krakora, Public Defender, attorney for appellant (Jack L. Weinberg, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Daniel Finkelstein, Deputy Attorney General, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

On June 17, 2014, M.A. (Megan) was found dead in a home she shared with defendant Nathan Williams, III.[1] A jury acquitted defendant of murder, but convicted him of the lesser included offense of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). Thereafter, defendant pled guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). He was sentenced to an extended term of fifty years in prison with periods of parole ineligibility and supervision as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appeals from his conviction and sentence. Through his counsel, he contends that (1) the prosecutor's comments throughout the trial constituted misconduct depriving him of a fair trial; (2) the trial court erred in denying his motion for a mistrial because the jury was given an exhibit list containing items not in evidence; (3) the court erred when it failed to charge the lesser included offense of passion/provocation manslaughter; (4) the court erred when it denied his motions for a judgment of acquittal and for a new trial; and (5) the sentence was excessive. Defendant also filed a supplemental brief

---

[1] We use initials and fictitious names to protect the privacy interests of the family of the victim and of witnesses.

A-1284-18

asserting numerous additional arguments. We affirm defendant's convictions, but remand for resentencing.

I.

We summarize the facts from the evidence presented at trial. In June 2014, defendant was living with Megan, but they were no longer dating. Instead, defendant was dating L.M. (Lori).

During the morning of June 17, 2014, Lori came to the house where defendant was living with Megan and found defendant in bed with a third woman, A.S. (Ann). Ann was also dating defendant, and she had recently moved into the house to be with him.

The State theorized that defendant assumed Megan told Lori that he had a sexual relationship with Ann. Accordingly, after Lori confronted defendant and Ann, defendant went into the kitchen and assaulted Megan by hitting her in the face. Megan ran out of the house and called the police.

Defendant left the house before the police arrived. Megan told a responding police officer that defendant had hit her, and the police took photographs of Megan's face depicting bruising.

At least an hour after defendant left the home, Megan, Lori, and Ann went to a Walmart store together. At Walmart, Lori met another friend, T.M.

3

(Tammy). Later in the day, Megan and Ann went back to the home, and Lori and Tammy spent the rest of the afternoon and early evening driving around.

Ann stayed with Megan until approximately 4 p.m. when she left the home. Video from a surveillance camera outside the home shows that defendant went into the house sometime in the late afternoon of June 17, 2014. There was some dispute and confusion over the time stamp on the video surveillance. Nevertheless, the State introduced evidence and argued that the video showed defendant arriving at the home in the late afternoon.

The State claimed Megan was killed around 5 p.m. During the late afternoon, Lori called Megan's cell phone and a man answered and said: "[D]on't call this phone anymore, the bitch is dead." Thereafter, Lori started calling and texting defendant. In one message, Lori texted: what the "f" was wrong with defendant; and in another message, she texted: "What did you do??!!!!!" Defendant texted Lori: "sorry" and he could not "take people crossing [him] anymore." Later that night, Lori told the police she believed defendant had answered Megan's phone and said "the bitch" was dead.

After Lori called Megan's phone and a man answered, Tammy called the police requesting a welfare check on Megan. Tammy then spoke with defendant by phone, and he asked why she called the police. At trial, Tammy testified that

she believed it was defendant who had answered Megan's phone. She also testified that earlier in the day defendant told her that he had hit Megan because she "crossed him."

At approximately 6:30 p.m. on June 17, 2014, two police officers arrived at Megan's home after being dispatched in response to Tammy's call. The officers entered the home and found Megan's lifeless body in the front hallway. One of the officers observed that Megan had injuries to her face and there was blood on her and in the area around her.

Thereafter, the police began searching for defendant. Later that night, the police saw defendant driving his vehicle. They signaled him to pull over, but he drove away, and a high-speed chase ensued. During the chase, defendant's car hit another car and defendant left his vehicle on foot. He tried to jump from a ramp to another part of the highway but fell about fifty feet to a street below. Defendant was injured, apprehended, and arrested.

A medical examiner performed an autopsy on Megan's body and opined that she had died of strangulation and her neck had been fractured. The examiner, who testified at trial as an expert, also opined that the death was a homicide.

5

In January 2015, defendant was indicted for nine crimes: first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); three counts of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c)(1); and four counts of second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b)(1).

Before trial, the court granted defendant's motion to sever the weapons offenses, and the matter proceeded to trial only on the murder charge. The court also granted defendant's motion to suppress a statement he had given to the police. In addition, the trial court heard oral argument on and granted the State's motion to admit evidence under N.J.R.E. 404(b) showing that defendant assaulted the victim hours before the murder.

Lori testified at trial that the voice of the male who answered Megan's phone was not defendant's voice. The State argued that that change in testimony was not credible and that on the night of the murder, Lori had told the police under oath that defendant had answered Megan's phone.

After the State presented its case, defendant moved for a judgment of acquittal in accordance with Rule 3:18-1. The trial court denied that motion. When the jury started deliberations, it came to light that the evidence log given to the jury listed items not in evidence. Defendant moved for a mistrial. The

A-1284-18

trial judge questioned each of the jurors individually and collectively and found that the jurors had not considered the items not admitted into evidence. Accordingly, the trial court denied the motion for a mistrial.

After hearing and considering the evidence at trial, the jury acquitted defendant of murder, but found him guilty of the lesser-included offense of aggravated manslaughter. Thereafter, defendant pled guilty to second-degree unlawful possession of a firearm, and the State agreed to dismiss the remaining weapons offenses. Defendant also filed a motion for a new trial, but the court denied that application.

At the sentencing hearing, the State moved for the imposition of an extended term, and the trial court granted that motion. On the conviction for aggravated manslaughter, defendant was sentenced to fifty years in prison subject to the mandatory parole ineligibility restrictions under NERA. Defendant was also sentenced to a concurrent term of ten years in prison on the conviction for unlawful possession of a firearm.

## II.

On this appeal, defendant makes numerous arguments challenging his conviction and sentence. His counsel filed a brief making five primary arguments, with related sub-arguments:

POINT I: THE PROSECUTOR'S COMMENTS THROUGHOUT THE TRIAL CONSTITUTED MISCONDUCT DEPRIVING THE DEFENDANT OF A FAIR TRIAL.

A – THE PROSECUTOR'S OPENING STATEMENT.

B – TRIAL BEHAVIOR.

C – THE PROSECUTOR'S CLOSING ARGUMENT.

POINT II: INCLUSION OF PREJUDICIAL INFORMATION NOT IN EVIDENCE ON THE EVIDENCE LOG SHEETS, J-2 IN EVIDENCE, GIVEN TO THE JURY FOR THEIR DELIBERATIONS DEPRIVED THE DEFENDANT OF A FAIR TRIAL. THE TRIAL COURT'S INTERVIEWS OF THE JURORS DID NOT ADEQUATELY RESOLVE THE ISSUE THAT THE JURORS DID NOT SEE OR CONSIDER THIS EXCLUDED PREJUDICIAL INFORMATION. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A MISTRIAL.

POINT III: THE TRIAL COURT ERRED WHEN IT FAILED TO CHARGE THE LESSER INCLUDED OFFENSE OF PASSION/PROVOCATION MANSLAUGHTER.

POINT IV: THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE PURSUANT TO R. 3:18-1. THE COURT FURTHER ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO R. 3:20-1.

A – MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO R. 3:18-1.

B – MOTION FOR A NEW TRIAL PURSUANT TO R. 3:20-1.

POINT V: THE COURT IMPOSED AN EXCESSIVE SENTENCE WHICH DID NOT TAKE INTO CONSIDERATION ALL APPROPRIATE CODE SENTENCING GUIDELINES.

Defendant also filed his own brief presenting what he delineated as ten arguments:

Legal Argument Point I. Opening Summary (Not raised below).

Legal Argument Point II. Suborning Perjury (Raised below).

Legal Argument Point III. Brady Violation (Not raised below).

Legal Argument Point IV. False Hearsay (Raised below).

Legal Argument Point V. Closing Summary (Not raised below).

Legal Argument Point VI. Improper Bolstering (Not raised below).

Legal Argument Point VII. False/Planted/Manipulated Evidence (Raised below).

Legal Argument Point VIII. Erroneous Instruction (Not raised below).

9

Legal Argument Point IX. Inadmissible Evidence List (Raised below).

Legal Argument Point X. Manipulated Video (Raised below).

Having reviewed these arguments in light of the evidence and applicable law, we discern no reversible error in defendant's manslaughter conviction. The sentencing court, however, used the wrong range in considering defendant's extended prison term. We therefore remand for resentencing.

1. The Prosecutor's Alleged Misconduct

Defendant argues that the prosecutor committed multiple acts of misconduct, beginning with his opening statement and all the way through summation. His counsel identifies numerous incidents of alleged misconduct, and defendant adds additional arguments about "[s]uborning perjury," "[b]olstering," and "[m]anipulated [e]vidence." Defendant contends that individually or collectively the misconduct deprived him of a fair trial, and his aggravated manslaughter conviction should be reversed. We disagree.

When considering claims of prosecutorial misconduct, courts "must weigh 'the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial.'" State v. Williams, 244 N.J. 592, 608 (2021) (quoting State v. Wakefield, 190 N.J. 397, 437 (2007)). "A prosecutor may comment on the facts

shown by or reasonably to be inferred from the evidence." State v. Carter, 91 N.J. 86, 125 (1982). We will reverse a conviction "on the basis of prosecutorial misconduct only if 'the conduct was so egregious as to deprive defendant of a fair trial.'" Williams, 244 N.J. at 608 (quoting Wakefield, 190 N.J. at 437).

In determining whether a prosecutor's misconduct was sufficiently egregious, an appellate court "must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred." State v. Marshall, 123 N.J. 1, 153 (1991). "Specifically, an appellate court must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." State v. Frost, 158 N.J. 76, 83 (1999).

"Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." Ibid. (citing State v. Ramseur, 106 N.J. 123, 323 (1987)). "The failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made." Id. at 84. "The failure to object also deprives the court of an opportunity to take curative action." Ibid. (citing State v. Bauman, 298 N.J. Super. 176, 207 (App. Div. 1997)).

If defense counsel did not object at trial, "defendant must demonstrate plain error to prevail [on appeal]." State v. Timmendequas, 161 N.J. 515, 576 (1999) (citing State v. Irving, 114 N.J. 427, 444 (1989)). "Plain error is 'error possessing a clear capacity to bring about an unjust result and which substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his defense.'" Id. at 576-77 (quoting Irving, 114 N.J. at 444).

First, defendant alleges that the prosecutor made three improper statements during his opening statement: (1) he used imagery of defendant beating the victim with his fists both in the morning and later in the afternoon when the victim was killed; (2) he told the jury that defendant took his ten fingers and wrapped them tightly around the victim's neck when there was no evidence to support that comment; and (3) he asked the jurors if they would "open that door and [] release [defendant]" if the State failed to meet its burden.

Defendant did not object to any of these statements at the time they were made and, therefore, we review them for plain error. Timmendequas, 161 N.J. at 576. The State did present evidence that defendant hit Megan in the morning and that she had been physically assaulted when she was strangled to death. Furthermore, although the medical examiner testified that the marks on the

victim's neck were not fingerprints, there was evidence that the victim's neck had been fractured through direct force because of strangulation. Consequently, there was sufficient evidence for the prosecutor's comments on the assault of the victim.

Concerning the prosecutor's statements about releasing defendant, that statement, when reviewed in context, is ambiguous. It is not clear if the prosecutor was referring to releasing defendant from the court room. More to the point, there was no objection at the time the comment was made. Instead, defense counsel objected days later but did not request a curative instruction to avoid drawing more attention to the comment. The court invited defense counsel to submit a motion regarding the objection. Defense counsel submitted a motion for a mistrial based on a claim of prosecutorial misconduct but later withdrew that motion. Under these circumstances, we discern no plain error.

Second, defendant argues that the prosecutor engaged in several acts of misconduct during the trial. The first instance involved the questioning of a police officer who responded to the assault in the morning. On direct examination, the prosecutor asked the officer what the victim said to him. Defense counsel objected, and the officer's response was cut off. The judge then instructed the jury to disregard the partial response from the officer. On cross-

13

examination, defense counsel questioned the officer and suggested the officer knew nothing about an assault. Based on that exchange, the trial judge ruled that defense counsel had opened the door and permitted the prosecutor to ask the detective about what the victim said.

"The 'opening the door' doctrine is essentially a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection." State v. James, 144 N.J. 538, 554 (1996) (emphasis omitted). The doctrine "allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence." Ibid. We discern no abuse of discretion in the trial court's ruling that defense counsel opened the door to this line of questioning. See Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (noting that courts use an abuse of discretion standard in reviewing evidentiary ruling).

Furthermore, even if defense counsel did not open the door, admitting the victim's statement to the responding police officer constitutes harmless error because there was other evidence demonstrating that defendant had assaulted Megan on the morning of the murder. See State v. R.B., 183 N.J. 308, 330-31

(2005) (prosecutor's comments did not "raise a reasonable doubt" as to whether error led jury to a verdict it otherwise would not have reached because evidence against defendant was "substantial and consistent").

Defendant also objects to video evidence presented by the State, arguing that the prosecutor engaged in misconduct by not removing the time stamp on the video after the judge instructed that those stamps be removed. Defense counsel did not object at the time that the video was played and, therefore, we review this issue for plain error. The evidence at trial demonstrates that the videos were properly authenticated, and although there were disputes over the accuracy of the time stamps on the video, there was no reversible error.

Defendant also contends there was misconduct when the prosecutor's computer screen was visible on a monitor that played the videos. The screen indicated that the prosecutor had a file entitled, "Interview of Nathan Williams." Defendant objected to this matter, and the judge instructed the jury to disregard the item on the screen that was not in evidence. Reviewed in context, the judge's instruction properly cured any prejudice to defendant.

Next, defendant argues that the prosecutor improperly mentioned the victim's boyfriend, C.B., was in jail at the time of the murder. This issue arose when defense counsel was questioning the victim's neighbor. The prosecutor's

comment was made as part of an objection. We do not discern any prejudice to defendant warranting a reversal of the jury verdict.

Finally, defendant raises two issues that occurred during the prosecutor's closing arguments: (1) the prosecutor improperly argued that the victim cried out for help when defendant assaulted her in the morning of June 17, 2014; and (2) the prosecutor improperly commented on defendant's right not to be compelled to be a witness against himself.[2]

Prosecutors are afforded wide latitude during summations. R.B., 183 N.J. at 330. Nevertheless, they must "confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." State v. Smith, 167 N.J. 158, 178 (2001) (citing Frost, 158 N.J. at 86).

During closing arguments, defense counsel contended that the State's investigation was not thorough, and that the real killer was not defendant. In response, the prosecutor stated that defendant was "sit[ting] there." Accordingly, the comment was in response to an argument by defense counsel and does not constitute reversible prosecutorial misconduct.

---

[2] Defendant also contends that the State improperly argued defendant beat and punched the victim, which we address in our discussion of the State's opening statement.

A-1284-18

The prosecutor also responded to defense counsel's argument that the death may have been an accident by pointing out that defendant was present in the home, did not call for help, and fled. Considered in context, the comment was responsive to defense counsel's arguments and was not a comment on defendant's right to remain silent. Moreover, defense counsel did not object and we discern no plain error.

In summary, defendant's arguments of prosecutorial misconduct rely on characterizations of those comments and assumptions about prejudice that are not supported by the record. Consequently, when considered individually or collectively, the alleged misconduct does not constitute reversible error.

2.    The Evidence Log

The evidence log given to the jury included items not admitted into evidence. The prosecutor used his evidence list, highlighted the items admitted into evidence, but did not delete or block out items not admitted. That list became the evidence log given to the jury when it began its deliberations. It had been marked as a joint exhibit and both the prosecutor and defense counsel informed the court that they had reviewed the evidence log before it was given to the jury.

A-1284-18

The issue came to light when the jury sent the court a note shortly after it began its deliberations asking if only the highlighted items on the log were in evidence. Defendant moved for a mistrial, contending that the jury had been prejudiced by seeing items not in evidence, including a reference to defendant's suppressed statement and weapons seized from defendant, but not at issue in the murder trial. After inquiring how the evidence log was prepared, the court ruled that there was no deliberate misconduct by the prosecutor.

The trial court then questioned the jurors individually and as a group. Several jurors stated that they had looked at some of the items on the list that were not in evidence, but all the jurors testified that none of them discussed or remembered anything on the evidence log that was not highlighted. Accordingly, the trial court denied defendant's motion for a mistrial. The judge also instructed the jury to consider only the evidence that was admitted at trial.

We review the trial court's denial of a request for a mistrial for abuse of discretion. State v. Musa, 222 N.J. 554, 565 (2015). A mistrial should only be granted "to prevent an obvious failure of justice." State v. Harvey, 151 N.J. 117, 205 (1997). We "will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice." Ibid. (citing State v. DiRienzo, 53 N.J. 360, 383 (1969)).

A-1284-18

Giving the jury a list with items not in evidence creates the potential for prejudice. The question is whether the mistake resulted in actual prejudice warranting a mistrial. The trial court initially had grave concerns. Nevertheless, it appropriately decided to question the jurors both individually and collectively. Individually, several jurors acknowledged that they had looked at the list and some even saw items that were not highlighted. Nevertheless, all the jurors testified that they had not discussed any items that were not highlighted, and they could no longer remember items on the list that were not highlighted. The trial court therefore found that there was no actual prejudice to defendant. That finding is supported by the record, and we discern no basis for disagreeing with that finding. Moreover, we discern no abuse of discretion in the trial court's decision to deny the motion for a mistrial.

Defendant's arguments are based on supposition and speculation. He wants us to assume that the jurors were not candid with the court when they said that they had not discussed, nor did they remember, any unhighlighted items that were on the initial evidence log given to them. We reject this argument as inconsistent with the judge's fact findings. We also reject the argument because the trial judge appropriately instructed the jury that they were only to consider evidence admitted at trial and we presume that they followed that instruction.

A-1284-18

See State v. Loftin, 146 N.J. 295, 390 (1996) ("[t]hat the jury will follow the instructions given is presumed"); see also State v. Burns, 192 N.J. 312, 335 (2007) (the presumption that a jury will follow the trial court's instruction is "[o]ne of the foundations of our jury system").

3.  Whether Passion/Provocation Should Have Been Charged

Defendant argues that the trial judge should have charged the jury to consider the charge of passion/provocation manslaughter as a lesser included offense to murder. Defense counsel did not request this charge at trial. Instead, he agreed with the trial judge that the lesser included offenses of aggravated manslaughter and reckless manslaughter should be charged. Accordingly, we review this argument for plain error. We discern no plain error.

"[A] trial court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." State v. Jenkins, 178 N.J. 347, 361 (2004). Nevertheless, when a charge is not requested, "the charge should be delivered to the jury only when there is 'obvious record support for such [a] charge . . . .'" State v. Funderburg, 225 N.J. 66, 81 (2016) (alteration in original) (quoting State v. Powell, 84 N.J. 305, 319 (1980)). "Only if the record clearly indicates a lesser-included charge—that is, if the evidence is

20

jumping off the page—must the court give the required instruction." State v. Denofa, 187 N.J. 24, 42 (2006).

Passion-provocation manslaughter consists of four elements: "the provocation must be adequate; the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying." State v. Mauricio, 117 N.J. 402, 411 (1990). "The first two criteria are objective, and the latter two are subjective." Funderburg, 225 N.J. at 80.

There was no clear evidence that defendant was entitled to a jury instruction on passion-provocation manslaughter. First, there was no clear evidence that defendant was provoked by the victim. The State's theory was that defendant thought Megan had told Lori about his relationship with Ann and that is why defendant assaulted and later killed Megan. No reasonable person in defendant's position would have been sufficiently provoked to arouse passion beyond the point of control. See Funderburg, 225 N.J. at 80 ("words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter") (quoting State v. Crisantos, 102 N.J. 265, 274 (1986)); see also State v. Viera, 346 N.J. Super. 198, 212 (App. Div. 2001) ("the

judge must determine whether a reasonable fact-finder could conclude that the loss of self-control was a reasonable reaction").

In addition, the evidence at trial demonstrated that defendant had adequate time to cool off even if there had been a provocation. Defendant first assaulted the victim in the morning. It was hours later when Megan was strangled to death. While it is difficult to set specific guidelines concerning the cooling off period, State v. Carrero, 229 N.J. 118, 129 (2017), a reasonable fact finder could not conclude that defendant had not had time to cool off given the incident that triggered his anger in the morning.

Accordingly, because there were no facts clearly suggesting the first two objective conditions for passion/provocation, the trial court did not commit plain error in not charging the jury with that instruction. See Mauricio, 117 N.J. at 412-13 ("[i]f no jury could rationally conclude that the State had not proven beyond a reasonable doubt that the asserted provocation was insufficient to inflame the passions of a reasonable person, the trial court should withhold the charge").

4.    Defendant's Motions at Trial

Defendant argues that the trial court erred in denying his motion for a judgment of acquittal and his motion for a new trial. We disagree.

A.    The Motion for a Judgment of Acquittal

The question on a motion for acquittal is

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967).]

If the State's evidence and its favorable inferences can support a guilty verdict, the motion for acquittal should be denied. State v. Jones, 242 N.J. 156, 168 (2020). Appellate review of the denial of a motion for acquittal is de novo. Ibid.

The State presented evidence that defendant got angry with Megan because he believed that she had told Lori that he was cheating on her; defendant assaulted the victim in the morning; video evidence showed that Megan and defendant entered the home late in the afternoon; defendant answered Megan's phone and stated "the bitch" was dead; defendant also sent a text stating that he could not take people crossing him anymore; and defendant fled from the police. Consequently, there was sufficient evidence supporting a finding of guilt of murder or aggravated manslaughter.

B. The Motion for a New Trial

A motion for a new trial is granted in the interest of justice. State v. Terrell, 452 N.J. Super. 226, 268 (App. Div. 2016); R. 3:20-1. The motion "is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). A trial court is in the best position to determine whether a new trial is warranted because the trial court has the best "feel for the case." Id. at 140.

Defendant moved for a new trial making primarily two arguments. First, he contended that the prosecutor engaged in misconduct. In that regard, defendant relies on the alleged prosecutorial misconduct that we have already analyzed and found did not warrant the reversal of the jury verdict. Accordingly, for the same reasons we reject the allegations of prosecutorial misconduct as a basis for a new trial.

Second, defendant argues he was entitled to a new trial because the trial court erred in admitting the surveillance video without proper authentication. At trial, several witnesses testified that the video depicted the victim's house on the day she was killed and that the video time stamp was off by approximately seventy-five minutes. Defendant concedes that the State presented witnesses

who authenticated the surveillance video clips from the morning and later in the early evening. Nevertheless, defendant argues that the State did not produce witnesses to say that the surveillance video was accurate in the late afternoon when he and the victim were depicted going into the house. Defendant, therefore, argues that the video was not authenticated to be accurate throughout the day.

We are not persuaded by this argument. The trial court heard the testimony of the various witnesses and was satisfied that the video was an authentic video and was admissible. See N.J.R.E. 901 (proponent "must present evidence sufficient to support a finding that the item is what its proponent claims"). The video was authenticated for the times in the morning and after the killing. Defendant introduced no evidence that the video would have been different in the afternoon. Indeed, defendant, through his counsel, vigorously argued that the video was not accurate and should not be relied on. While defendant was free to make those arguments at trial, we discern no abuse of discretion in the trial court's decision to allow the video to be admitted and played for the jury.

5. The Sentence

We review sentencing determinations under a deferential standard. State v. Grate, 220 N.J. 317, 337 (2015). We "do[] not substitute [our] judgment for the judgment of the sentencing court." State v. Lawless, 214 N.J. 594, 606 (2013). Instead, we will affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

The trial court sentenced defendant as a persistent offender under N.J.S.A. 2C:44-3(a). Defendant concedes that he qualified for a discretionary extended term sentence as a persistent offender. He argues, however, that the extended term of fifty years for the conviction of aggravated manslaughter was excessive.

In sentencing defendant, the trial court found aggravating factors one, the nature and circumstance of the offense, including whether it was committed in an especially heinous, cruel, or deprived manner, N.J.S.A. 2C:44-1(a)(1); two, the gravity and seriousness of the harm inflicted on the victim, N.J.S.A. 2C:44-

26

1(a)(2); and nine, the need to deter, N.J.S.A. 2C:44-1(a)(9). The court found no mitigating factors.

After finding that defendant was a persistent offender, the court reasoned that the range of the extended term was between thirty years and life. That range was incorrect. Aggravated manslaughter is a first-degree offense, and the range for the sentence is between ten years and thirty years. See N.J.S.A. 2C:11-4(c). Accordingly, while the court had discretion to sentence him to an extended term, that term does not begin with thirty years. Using the thirty years to life range effectively made the sentence a sentence for a murder conviction. See N.J.S.A. 2C:11-3(b)(1) (prescribing that a sentence for murder is between thirty years and life imprisonment with thirty years of parole ineligibility). Defendant, however, had been acquitted of murder. In other words, the sentencing court erred by reasoning that the extended term was the same term that could have been imposed if defendant had been convicted of murder. Sentencing courts cannot sentence a defendant for a crime of which defendant has been acquitted. See State v. Melvin, ___ N.J. ___, ___ (2021) (slip op. at 42-43).

It does not appear as if the sentencing court sentenced defendant based on a finding that he committed murder, but his selection of the range for an extended term of thirty years to life had the same practical effect. The correct

range for an extended term for a conviction of aggravated manslaughter is ten years to life imprisonment subject to NERA. See N.J.S.A. 2C:11-4(c); N.J.S.A. 2C:43-7(a)(1); N.J.S.A. 2C:44-3; see also State v. Pierce, 188 N.J. 155, 169-70 (2006) (noting that once a sentencing court determines that the elements for an extended-term sentence are present, "the range of sentences[] available for imposition[] starts at the minimum of the ordinary-term range and ends at the maximum of the extended-term range").

Consequently, we are constrained to remand for a resentencing. Because we are remanding for a new sentence, we need not address defendant's arguments concerning the aggravating factors and the real time consequences of the sentence. Those issues will have to be reassessed and new findings will need to be made during the resentencing.

6.    Defendant's Additional Arguments

Defendant submitted a supplemental brief that he prepared himself. He raises multiple arguments, some of which overlap with arguments made by his appellate counsel. Most of those arguments were not raised at trial and are being raised for the first time on appeal. Having reviewed the arguments, we find that none of them have sufficient merit to warrant discussion in a written opinion.

See R. 2:11-3(e)(2).  Accordingly, we reject all of defendant's supplemental arguments.

Defendant's convictions are affirmed.  His sentence is vacated, and the matter is remanded for resentencing.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1284-18