**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3281-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NICHOLAS N. ALEXANDER, a/k/a
NICK ALEXANDER,

    Defendant-Appellant.

_____

Submitted May 15, 2018 — Decided June 14, 2018

Before Judges Yannotti and Carroll.

On appeal from Superior Court of New Jersey,
Law Division, Cape May County, Indictment No.
15-03-0253.

Joseph E. Krakora, Public Defender, attorney
for appellant (Stefan Van Jura, Deputy Public
Defender II, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent (Adam D. Klein, Deputy Attorney
General, of counsel and on the brief).

PER CURIAM

    Defendant was tried before a jury and found guilty of third-

degree possession of a controlled dangerous substance (CDS),

specifically methamphetamine, Schedule II, contrary to N.J.S.A. 2C:35-10(a)(1). Defendant appeals from the judgment of conviction dated February 3, 2017. We affirm.

I.

A Cape May County grand jury charged defendant with third-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count one), and third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count two). Defendant thereafter filed a motion to suppress physical evidence. Following an evidentiary hearing, the trial court denied the motion. The court later granted the State's motion to dismiss count one, and defendant was tried before a jury on count two.

At the trial, Patrolman Matthew Gamble of the Lower Township Police Department (LTPD) testified that on January 30, 2015, at around 9:00 p.m., dispatch directed him to respond to a residence on Maple Avenue to check on a person named "Nicholas Alexander." Gamble went to the residence and walked around the exterior of the home but found nothing unusual.

Patrolman Ryan Hansberry of the LTPD arrived on the scene. Gamble and Hansberry checked the front door and found that it was unsecured. The officers announced that they were from the "Lower Township Police" but received no response. They entered the house and began to clear the house for officer safety. While in the living room, the officers heard someone state, "[W]hat's going

on?" Gamble said he believed the voice was coming from the bathroom.

Gamble asked whoever was in the residence to come out with his hands up. Initially, no one responded. The officers repeated the command. A man quickly exited the bathroom, asked what was going on, and ran into the adjacent bedroom. Gamble identified the man as defendant. Gamble and Hansberry directed defendant to come out with his hands up. He failed to comply, and the officers repeated their command. Eventually, plaintiff came out with his hands up. He was wearing a pink towel around the waist, and had a black cell phone in his hand.

Gamble told defendant to put the phone down and asked if anyone else was in the house. Defendant said he was not sure. At that point, Hansberry began to clear the kitchen area to ensure no one else was in the house. Gamble opened the bathroom door and on the back of the toilet, found a spoon with white powder. Gamble asked defendant what the substance was. Gamble believed it was crystal methamphetamine.

In the bedroom from which defendant emerged, the officers found more white powdery substance. On the bed, the officers found a plate with white powder on it. The officers also found several bags with a residue of white powder, hypodermic needles, and a

razor blade to split the powder. Hansberry took photos of the contraband.

Gamble said they were in the house for about an hour. During that time, the officers did not see any other residents. Gamble testified that he did not observe anything that led him to believe that anyone else was living in the house. He acknowledged, however, that defendant's mother owned the house and sometimes rented out rooms.

Hansberry also described the officers' entry into the house and their encounter with defendant. Hansberry testified that he went into the bedroom that defendant had entered and observed a plate on the bed with white substance believed to be methamphetamine. He also found glassine baggies containing a white substance also thought to be methamphetamine, and hypodermic needles.

Hansberry and Gamble further testified that because defendant claimed he was injured and said he had been doing methamphetamine for three days to harm himself, they called "rescue." Hansberry stated that in the past, defendant's mother had rented rooms in the house, but he did not know if she was renting any rooms at that time. Hansberry also stated that the house had an upstairs apartment, but when he cleared the rooms, he did not enter that apartment.

Defendant elected not to testify, and he did not call any witnesses. In summation, defendant's attorney argued the State had failed to prove beyond a reasonable doubt that defendant knowingly possessed the CDS. Counsel stipulated that the CDS found in the home was methamphetamine. Counsel argued, however, that defendant's mother owned the home and at times, she rented out rooms. Counsel also pointed out that there also was an upstairs apartment in the house.

Counsel asserted that the officers had cleared the house but did not see anyone other than defendant. The officers said they did not know whether anyone was living upstairs. Counsel argued that this was enough evidence to establish reasonable doubt as to whether defendant had control over and possession of the illegal substance.

The jury found defendant guilty of possession of CDS. Thereafter, the trial court sentenced defendant to a flat five-year term of incarceration. This appeal followed.

On appeal, defendant raises the following arguments:

> POINT I
> DEFENDANT WAS DENIED A FAIR TRIAL BY THE TRIAL COURT'S FAILURE TO DELIVER AN ADVERSE INFERENCE CHARGE REGARDING THE STATE'S INEXPLICABLE LOSS OF AUDIO RECORDINGS OF COMMUNICATIONS BETWEEN THE RESPONDING OFFICERS AND DISPATCH. (Not Raised Below).

THE MAXIMUM FIVE-YEAR PRISON SENTENCE WAS
MANIFESTLY EXCESSIVE FOR SIMPLE POSSESSION OF
A PERSONAL USE QUANTITY OF METHAMPHETAMINE IN
A PRIVATE RESIDENCE.

## II.

Defendant contends the trial judge erred because he did not provide the jury with an adverse inference charge regarding the State's failure to retain audio recordings of communications between the responding officers and the police dispatcher. Defendant asserts that his only defense was that he did not knowingly possess the drugs, and for that defense to be viable, he had to show that the drugs belonged to someone else, perhaps someone who rented a room in the house from defendant's mother.

Defendant asserts that if the officers' communications with dispatch revealed that the officers had encountered any other person on the scene, such evidence would have undercut Gamble's and Hansberry's credibility. Defendant contends that despite their "centrality" to the case, the State did not retain the dispatch recordings.

Defendant contends that because the recordings might have contained evidence adverse to the State's case, the judge was obligated to provide the jury with an adverse inference instruction. Defendant contends the judge's failure to provide that instruction denied him of due process and a fair trial.

A-3281-16T4

We note that defendant did not seek the adverse inference charge at trial. Therefore, we must determine whether the judge's failure to provide the instruction constitutes plain error, that is, an error "clearly capable of producing an unjust result." R. 2:10-2.

"The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016). To warrant reversal, the error must raise a "reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." Ibid. (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

In State v. W.B., 205 N.J. 588, 597 (2011), the defendant was charged with the sexual abuse of his fourteen-year-old step-daughter. The investigating detective destroyed the notes she took of interviews she conducted of the defendant and the victim. Id. at 607. The Court determined that Rule 3:13-3(c) required the State to provide the defense with the writings of any police officer under the prosecutor's supervision. Id. at 608.

The Court stated that because an officer's notes may be of aid to the defense, the trial court may impose "an appropriate sanction" if the officer has not preserved the notes of any interviews with the defendant or key witness. Ibid. (citations omitted). The Court ruled that prospectively, if the officer's

notes are lost or destroyed, a defendant may be entitled to an adverse inference charge, molded to the facts of the case. Id. at 608-09. However, because the defendant did not request the adverse inference charge before final jury instructions, and did not raise the issue in a motion for a new trial, the Court refused to hold that the defendant was entitled to the instruction. Id. at 609.

In State v. Dabas, 215 N.J. 114, 117 (2013), the defendant was found guilty of murdering his wife, based largely upon statements the defendant made to the prosecutor's investigators. An investigator purposefully destroyed the notes taken during the interrogation. Ibid. The Court held that the investigator's notes were discoverable material under Rule 3:13-3(c), and the prosecutor violated the rule by failing to retain the notes. Id. at 133-35.

The Court determined that the trial court erred by denying the defendant's request for an adverse inference charge, noting that the charge is one permissible remedy for a discovery violation. Id. at 140-41. The Court stated that the purpose of the charge is to "balance the scales of justice." Id. at 140. The Court stated that the trial court should have instructed the jury that the State had a duty to produce the pre-interview notes to the defense, and because the State did not make the notes

available, the jury could "draw an inference that the contents of the notes were unfavorable to the State." Id. at 141.

Applying the principles of W.B. and Dabas, we conclude the trial judge's failure in this case to provide the jury with an adverse inference charge sua sponte is not reversible error. The State's discovery obligation under Rule 3:13-3(b)(1) applies to all "relevant material." Rule 3:13-3(b)(1)(E) requires disclosure of, among other materials, "sound recordings" that are within the prosecutor's "possession, custody or control."

However, in this case, defendant has not shown that the State violated its discovery obligation by failing to retain the dispatch recordings. Defense counsel never demanded that the State preserve these recordings.

Moreover, defendant has not shown that the dispatch recordings were relevant evidence. "Evidence is relevant if it 'ha[s] a tendency in reason to prove or disprove any fact of consequence to the determination of the action.'" State v. Hernandez, 225 N.J. 451, 462 (2016) (quoting N.J.R.E. 401).

Defendant speculates that the officers may have come upon someone else in the house and mentioned that to the police dispatcher. Defendant suggests the dispatch tapes would have allowed his attorney to challenge the credibility of the officers. However, there is no testimony or evidence supporting defendant's

speculation. There is no evidence indicating that in their trial testimony, the officers falsely stated that defendant was the only person they found in the house.

We conclude that under the circumstances, imposition of a discovery sanction was not warranted. The judge's failure to provide an adverse inference charge sua sponte was not an error, let alone an error "clearly capable of producing an unjust result." R. 2:10-2.

### III.

Defendant also argues that his sentence is excessive. He contends the sentence should be set aside and the matter remanded for resentencing.

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). We must affirm the sentence if: (1) the trial court followed the sentencing guidelines; (2) the court's findings of aggravating and mitigating factors were based on competent and credible evidence in the record; and (3) the resulting sentence is not clearly unreasonable so as to "shock the judicial conscience." Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Here, the trial court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another

offense); six, N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record and the seriousness of the offenses of which he had been convicted); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law).

The judge noted that this matter represents defendant's fourth felony-level conviction. Defendant has a significant criminal history that includes at least nine arrests, four of which were as a juvenile. Defendant has three prior indictable convictions, two of which were in Florida, and which were juvenile cases waived to adult court.

Defendant was sentenced to a probationary term for his first indictable conviction, but he violated the terms of probation and was sentenced to four years in New Jersey State Prison. In addition, at the time of sentencing, defendant had a pending first-degree charge of maintaining or operating a CDS production facility.

The judge found that aggravating factor three was present due to defendant's recidivism and substance abuse. The judge gave that factor substantial weight. The judge found aggravating factor six due to the extent of defendant's prior criminal record and the seriousness of the offenses involved. The judge gave that factor "slightly substantial weight." The judge found aggravating factor nine, noting that there was a need to deter defendant,

specifically, and others from violating the law. The judge gave aggravating factor nine very substantial weight.

The judge also found mitigating factor two applied, N.J.S.A. 2C:44-1(b)(2) (defendant did not contemplate that his conduct would cause or threaten serious harm). The judge determined, however, that this factor should be given "very slight weight."

The judge also found the record did not support the finding of mitigating factors one, N.J.S.A. 2C:44-1(b)(1) (defendant's conduct neither caused nor threatened serious harm); and ten, N.J.S.A. 2C:44-1(b)(10) (defendant is likely to respond favorably to probation) did not apply. The judge stated that because the police did not know what they would find in the home, defendant's conduct could have caused or threatened serious harm. The judge additionally stated that in view of defendant's prior criminal record, a probationary sentence was not appropriate.

The judge found that the aggravating factors substantially outweighed the sole mitigating factor. The judge therefore determined that a five-year term of imprisonment was appropriate under the circumstances. The judge also imposed appropriate monetary fees and penalties.

On appeal, defendant argues the judge should have found mitigating factor one, and given significant weight to mitigating factors one and two. He further argues that the judge should have

given minimal weight to the aggravating factors. He therefore argues that the five-year sentence is manifestly excessive.

We disagree. We are convinced the judge followed the applicable sentencing guidelines and the record supports the judge's findings on the aggravating and mitigating factors. The sentence imposed is not excessive and does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3281-16T4