# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2963-20

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

D.G.,

     Defendant-Appellant,

and

P.G.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF E.G. and
B.G., minors.

_____

Submitted September 19, 2022 — Decided September 28, 2022

Before Judges Mawla, Smith and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FG-08-0034-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Robert W. Ratish, Designated Counsel, on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; David B. Valentin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant D.G. appeals from a May 5, 2021 judgment terminating her parental rights to E.G. and B.G., and granting the Division of Child Protection and Permanency (Division) a judgment of guardianship.[1] We affirm.

D.G. has a history of substance abuse, including heroin, a lack of housing, and unemployment. The Division received its first referral involving this family in December 2016, when the maternal grandparents called with

---

[1] The court also granted a judgment against P.G., the children's father. The Division's last contact with him was August 2019. Thereafter, he could not be located and did not participate in the trial or this appeal.

concerns D.G. was trying to take her children from them while under the influence of drugs. The second referral occurred in November 2018, when the grandparents informed the Division D.G. was using heroin and would not be allowed back into their home or remove the children from their home.

On December 10, 2018, a urine screen showed D.G. was positive for fentanyl, amphetamines, benzodiazepines, and Suboxone. The following day, the Division attempted to implement a safety protection plan with D.G. and her parents, but after another argument between them. D.G. was asked to leave because her parents did not feel safe in her presence. The Division executed an emergency removal on December 12, 2018, placing the children in the care of the maternal grandparents. The children have remained in their grandparents' care since then.

In February 2020, the trial court terminated the abuse and neglect case and the matter proceeded into a guardianship. At a January 2021 permanency hearing, the court approved the Division's plan of termination of parental rights followed by adoption by the maternal grandparents. The matter was tried over Zoom during two non-consecutive days in April 2021. None of the parties objected to the virtual format.

A-2963-20

The Division presented testimony from its caseworker and a forensic psychologist, both of whom the trial judge found credible. Although the caseworker served D.G. with the trial notice and explained the differences between a virtual and in-person trial to D.G., who did not object, D.G. did not attend the first day of trial and part of the second day. She was represented by counsel but did not call any witnesses. The law guardian also called no witnesses.

The caseworker testified D.G. failed to stay in contact with the Division and update the Division regarding her whereabouts and employment status. D.G. told the caseworker she lacked housing, sometimes lived with a friend, moved from couch-to-couch, and never provided the Division with a permanent address. Further, D.G. was non-compliant with her substance abuse evaluation, never completed substance abuse treatment, and sporadically visited the children. D.G.'s last visit occurred in September 2020, approximately seven months before the trial.

The caseworker testified the children wished to be adopted. She explained the grandparents wanted to attempt kinship legal guardianship (KLG) for one year and then move to adoption if circumstances did not

4

change. However, after a failed mediation in August 2020, the grandparents changed their position, choosing adoption over KLG.

The expert testified he conducted a psychological evaluation of D.G., a bonding evaluation of the children and D.G., and a separate bonding evaluation with the maternal grandparents. He explained D.G. had longstanding substance abuse, unemployment, and criminality problems noting she had arrests for driving while intoxicated and drug possession. D.G. failed to accurately report her history of substance abuse and would not share her arrest history with the expert. The psychological tests administered revealed a history of trauma, depression, and post-traumatic stress, posing a risk to D.G.'s ability to safely care for the children. The expert opined D.G.'s progress and prognosis for parenting the children "was poor, maybe less[,]" and she would not be able to care for the children at present, or in the foreseeable future. Even if D.G. were compliant with services, the expert opined it would take her considerable time to complete them to be able to care for the children.

The expert explained the children had a strong bond with D.G. and the maternal grandparents. However, because of D.G.'s inconsistent involvement in the children's lives and the numerous separations resulting from her substance abuse, the children would be at risk of long-term harm if they

remained with D.G. Furthermore, the children would suffer slight risk of harm if their relationship with D.G. were severed. However, they would suffer a high risk of long-term emotional harm and disruption if cut off from the maternal grandparents because they have been the source of stability in the children's lives. D.G. would not be able to mitigate the harm. The grandparents had a history of ameliorating the harm caused by the loss of their relationship with D.G. and would continue to do so into the future. The expert opined adoption was the better permanency plan than KLG. He explained D.G.'s historic cycle of progress followed by setbacks, and D.G. repeatedly assuring the children the family would reunify, damaged the children by confusing them and giving false hopes.

The trial judge concluded the Division met all four prongs of the statutory best interests test, N.J.S.A. 30:4C-15.1(a), by clear and convincing evidence. He found D.G.'s "actions or inactions . . . in failing to provide her parental attachment to the children by continuing to be in need of substance abuse treatment, lack of proper housing, off and on visitation over a period of more than two years, and overall the quality of that relationship" harmed the children. Citing the Division's expert testimony, the judge found D.G. "either unwilling or unable to overcome the addiction issues that she continues to

A-2963-20

face, and . . . the . . . maternal grandparents[] have provided a stable home and that removing them from that . . . home would cause more serious and enduring emotional and psychological harm to the children." Citing the case worker's testimony and reviewing the Division's contact sheets, the judge found the Division offered reasonable services aimed at reunification, but D.G. "failed to take advantage of those services and [was] . . . unable or unwilling to do so throughout the course of this litigation." The judge concluded the Division proved the fourth best interests prong because the psychological and bonding evaluations showed a termination of parental rights would not do more harm than good.

D.G. appealed from the guardianship judgment. She moved for summary disposition, or alternatively a remand, for further fact finding because the trial judge made no findings under the third best interests prong regarding whether the Division considered alternatives to a termination of parental rights. The law guardian also moved for a limited remand and the Division did not oppose the law guardian's motion. We denied D.G.'s motion for summary disposition without prejudice because we granted the law guardian's motion for the limited remand.

7

On remand, the law guardian called the maternal grandparents to testify regarding their reasons for seeking adoption over KLG. The trial judge found them both "to be very credible witnesses[.]" The maternal grandfather explained he and the grandmother wanted to proceed with KLG, but ultimately preferred adoption because they felt D.G. needed more time to rehabilitate, and she continued to relapse. The grandfather also explained he did not want KLG because he did not want to risk giving up the children in the event the court granted a motion to vacate it. The judge noted he "held to his position" notwithstanding the cross-examination.

The maternal grandmother echoed the grandfather's testimony and explained an adoption would give the children a normal life. Her position on adoption was also unequivocal. She had numerous conversations about KLG and attended classes with the grandfather to understand the differences between KLG and adoption. The judge found "clearly she wants adoption."

The judge concluded the Division proved it explored alternatives to the termination of parental rights. The grandparents' view on adoption was "more than a preference. It is exactly what they want and what they asked [the c]ourt to [order.]"

I.

On appeal, D.G. challenges the trial judge's findings on all four of the statutory best interests prongs. She argues the first prong was not proved because she had positive interactions with the children during her visits and was in the process of recovery. Similarly, the second prong was not met because she was determined to overcome her substance abuse problems and sought out services. She claims the Division did not meet its burden under the third prong because the evidence showed the grandparents considered KLG a viable option, the Division's expert also favored it, and recent legislative amendments have made KLG preferred over adoption. D.G. contends the fourth prong was not proved because the bonding evaluation showed the children were bonded with her. She argues she was denied due process because her internet connection failed during trial and the court continued without her.

Appellate review in termination of parental rights cases is limited. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the factual findings underlying the trial court's decision if they are supported by "'adequate, substantial and credible evidence' on the record." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re

9                                                          A-2963-20

Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Reversal is warranted only when a trial court's findings are 'so wide of the mark that a mistake must have been made[.]'" N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012) (quoting M.M., 189 N.J. at 279).

II.

The statutory best interests test requires the Division to prove the following four prongs by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

10

> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

"The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999).

## A.

We reject the arguments raised by D.G. related to prongs one and two of the best interests analysis. The evidence in the record overwhelmingly shows D.G.'s unaddressed substance abuse was the driving force for her inability to provide the children with housing and a safe environment, and she endangered the children. Furthermore, despite years of services, D.G. continued to test positive for drugs and was unable to successfully complete the substance abuse treatment services to enable reunification with the children. Her assertion she complied with services and enjoyed positive visits with the children is belied by a record of missed visits, sometimes for months at a time. Given the poor track record and prognosis for success, the clear and convincing evidence shows D.G. was either unwilling or unable to ameliorate the harm she caused the children.

11                                                                 A-2963-20

## B.

We are unpersuaded by D.G.'s prong three arguments whether viewed through the lens of the facts adduced at trial or the recent statutory amendments. We address these arguments in turn.

Effective July 2, 2021, the Legislature amended the Kinship Legal Guardianship Act to state: "Kinship care is the preferred resource for children who must be removed from their birth parents because use of kinship care maintains children's connections with their families." S. 3814 (2021). Setting aside whether the Legislature intended this provision to apply retroactively, we are unconvinced the evidence in the record supports a narrative the Division, its expert, or the maternal grandparents did not seriously consider KLG. The evidence shows the grandparents favored KLG until it was clear D.G. was unable to rehabilitate. Moreover, the grandparents explained their rationale during the remand proceedings, not only giving the trial judge insight to their deliberations but convincing the judge they were properly informed about the differences between KLG and adoption. The expert's testimony also confirmed the window for KLG had closed. Therefore, regardless of preference for KLG, it simply was not an option here.

A-2963-20

## C.

Prong four of the best interests test, N.J.S.A. 30:4C-15.1(a)(4), "'serves as a fail-safe against termination even where the remaining standards have been met.'" N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 108 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 609 (2007)). "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with that parent." Ibid. "'Our courts have recognized that a child's relationship with a parent is of such significance that doubts are to be resolved against its destruction.'" N.J. Div. of Youth & Fam. Servs. v. F.M., 375 N.J. Super. 235, 264 (App. Div. 2005) (quoting In Re Guardianship of J.E.D., 217 N.J. Super. 1, 15-16 (App. Div. 1987)).

Pursuant to these principles, we conclude the trial judge did not err in finding adoption would not do more harm than good. Indeed, the unrebutted expert testimony clearly and convincingly established the children's bonds with the grandparents could not be severed because doing so would cause the children harm that could not be ameliorated, whereas the bond with D.G. could be severed and the resulting harms salved.

13

III.

D.G. argues her due process rights were violated when she lost connectivity during the trial because the expert testified regarding hearsay evidence, namely, statements D.G. allegedly made regarding how long she was drug-free and statements to the grandparents regarding her housing, which were relayed to the caseworker. She argues she was deprived of the right to confront these witnesses. We are unconvinced there was a due process violation warranting a reversal here.

At the outset, we note D.G. did not attend the first day of trial. The second day of trial occurred ten days later on April 26, 2021. The transcript shows following the expert's direct testimony, the court took an approximately fourteen-minute break. When trial resumed, the judge noted

> we have lost contact with [D.G.]. . . .
>
> We continued to try to reach her through our monitor to reconnect her to Zoom. We have also asked . . . the . . . caseworker[] if she could reach out to her. She has indicated that she has called the number, but the number went to busy, then voicemail, and that voicemail was full so we could not leave any voicemail. [The caseworker] has also attempted to text [D.G.].

The transcript notes trial continued for approximately one more hour with cross-examination of the expert and then the caseworker was briefly recalled to the stand.

Where a party fails "to object to an error or omission at trial, we review for plain error" and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). "Due process requires adequate notice and a fair opportunity to be heard." Div. of Youth & Fam. Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div. 2003). "An action for termination of parental rights is a civil action. The requirements of due process do not confer a constitutional right of confrontation or mandate a parent's presence at the trial." Id. at 467.

Pursuant to these principles, we are satisfied there was no due process violation. D.G.'s counsel never objected to continuing without her, and D.G.'s presence was not required for her counsel to have objected to the alleged hearsay. D.G. does not explain what efforts she made to reconnect to the proceedings or contact the caseworker or her counsel the day of the trial. Moreover, after filing this appeal, D.G. moved for summary disposition and reversal of the guardianship judgment, yet never raised the due process issue.

A-2963-20

Finally, as for the allegedly objectionable statements themselves, the expert testified D.G. told him housing was the only issue standing in the way of reunification with the children and that she was drug free since May 2019. The statement made to the caseworker was that the grandparents told the caseworker they paid to fix a window on D.G.'s car because she reported that she was sleeping in her car.

We are unconvinced these statements were clearly capable of producing an unjust result. D.G.'s housing, substance abuse issues, and her lack of reliability as a reporter of her rehabilitation progress went far beyond these alleged statements. The record does not show the expert's assessment of D.G. turned on D.G.'s statement regarding her status in May 2019, let alone that the judge relied on it. The evidence of D.G.'s housing instability exceeded the limited testimony by the caseworker regarding the grandparents' repair of D.G.'s car window. And, in the absence of an objection, the statements were admissible under N.J.R.E. 803(b)(1) and N.J.R.E. 803(c)(25).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16